Phillip S. SCHNEIDER, Appellant,

v.

DIRECTOR OF REVENUE, State
of Missouri, Respondent.

No. ED 94608.

Missouri Court of Appeals,
Eastern District,
Division Five.

April 5, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 13, 2011.

Application for Transfer Denied
June 28, 2011.

Carl M. Ward, Washington, MO, for appellant.

Trevor S. Bossert, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Phillip Schneider (Schneider) appeals from the judgment of the Circuit Court of St. Charles County upholding the Director of Revenue's suspension of Schneider's driving privileges. Schneider contends that the trial court erred in admitting the results of his breath alcohol test because the test failed to comply with Mo.Rev.Stat. §§ 577.020–577.041 (Cum.Supp.2006).[1] We affirm.

### Background

On December 6, 2008, Schneider was arrested for driving while intoxicated and submitted to a breath alcohol test. Officer Thompson, who administered Schneider's test, completed a checklist certifying that he conducted the breath alcohol test in accordance with the Department of Health and Senior Services' (DHSS) regulations.

---

1. All statutory citations are to Mo.Rev.Stat. (2000), unless otherwise specified.

At the time he administered the test, Officer Thompson possessed a DHSS-issued permit authorizing him to administer breath alcohol tests. Schneider's test registered a blood alcohol concentration of .121%. Based on the results of Schneider's test, the Director suspended Schneider's driving privileges. Schneider filed a petition in the Circuit Court of St. Charles County for a trial de novo to contest the suspension.

At trial, Schneider and the Director stipulated that the sole contested issue was the admissibility of Schneider's breath alcohol test results. Schneider filed written objections to the admission of his breath alcohol test results, contending that he did not impliedly consent to his breath alcohol test because the test failed to comply with Sections 577.020–577.041.

In his written objections, Schneider relied on Section 577.020, which states in pertinent part:

Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of the person's breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of the person's blood. . . .

Under Section 577.037, a breath alcohol test administered in violation of Sections 577.020–577.041 is inadmissible in a driver's license suspension or revocation proceeding. *Reed v. Dir. of Revenue,* 184 S.W.3d 564, 567–68 (Mo.2006).

Schneider argued that his breath alcohol test failed to comply with Sections 577.020–577.041 because Officer Thompson did not possess a permit issued by the Missouri Department of Transportation (MoDOT) and MoDOT had not approved methods for administering breath alcohol tests. Sections 577.020 and 577.026 direct DHSS to issue permits and approve methods for breath alcohol testing and require that a person performing a breath alcohol test possess a DHSS permit and act pursuant to DHSS's methods.[2] Schneider, however, contended that Executive Order 07–05 (the 2007 Order) transferred DHSS's

---

2. Specifically, Section 577.020 provides in pertinent part:

    3. Chemical analysis of the person's breath, blood, saliva, or urine to be considered valid pursuant to the provisions of sections 577.019 to 577.041 shall be performed according to methods approved by the state department of health and senior services by licensed medical personnel or by a person possessing a valid permit issued by the state department of health and senior services for this purpose.

    4. The state department of health and senior services shall approve satisfactory techniques, devices, equipment, or methods to be considered valid pursuant to the provisions of sections 577.019 to 577.041 and shall establish standards to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state department of health and senior services.

Similarly, Section 577.026 provides:

    1. Chemical tests of the person's breath, blood, saliva, or urine to be considered valid under the provisions of sections 577.020 to 577.041, shall be performed according to methods and devices approved by the state department of health and senior services by licensed medical personnel or by a person possessing a valid permit issued by the state department of health and senior services for this purpose.

    2. The state department of health and senior services shall approve satisfactory techniques, devices, equipment, or methods to conduct tests required by sections 577.020 to 577.041, and shall establish standards as to the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state department of health and senior services.

responsibilities under Sections 577.020–577.041 to MoDOT prior to his breath alcohol test.

The 2007 Order, signed by Governor Matt Blunt on January 30, 2007 provides in pertinent part:

NOW, THEREFORE, I, MATT BLUNT, GOVERNOR OF THE STATE OF MISSOURI, ... do hereby order the Missouri Department of Health and Senior Services and the Missouri Department of Transportation *to cooperate to:*

1. Transfer all the authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other vestiges of the Breath Alcohol Program from the Missouri Department of Health and Senior Services to Missouri Department of Transportation, by Type I transfer, as defined under the Reorganization Act of 1974; and

2. Develop mechanisms and processes necessary to effectively transfer the Breath Alcohol Program to the Missouri Department of Transportation; and

3. Transfer the responsibility for staff support for the Breath Alcohol Program from the Missouri Department of Health and Senior Services to the Missouri Department of Transportation; and

4. Take the steps necessary to maintain compliance with federal requirements, so as not to jeopardize federal financial participation with this consolidation.

(emphasis added).[3] The 2007 Order stated that it "shall become effective no sooner than August 28, 2007, ..."[4]

The trial court overruled Schneider's written objections, admitted the results of the breath alcohol test, and entered its judgment upholding the Director's suspension of Schneider's driving privileges. Schneider appeals.

### Standard of Review

■ In a court-tried case, we review the judgment in accordance with *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We affirm the judgment unless there is insufficient evidence to support it, it is against the weight of the evidence, or it declares or applies the law erroneously. *Id.*; *Bruce v. Dep't. of Revenue*, 323 S.W.3d 116, 118 (Mo.App. W.D.2010).

### Discussion

■ In his sole point on appeal, Schneider contends that the trial court erred in admitting the results of his breath alcohol test because DHSS's responsibilities for the Breath Alcohol Program (the BAP) transferred to MoDOT on August 28, 2007. Based on this contention, Schneider further claims that because Officer Thompson did not possess a MoDOT-issued permit and, subsequent to August 28, 2007, MoDOT failed to approve meth-

---

3. As described by the 2007 Order, "the Breath Alcohol Program is responsible for performing on-site inspection of breath analyzers, as well as, approving permits to operate and maintain evidential breath analyzers; permits to analyze blood, urine and saliva for drugs; and courses to instruct permit holders in the use of breath analyzer equipment[.]"

4. We note that the Governor submitted the 2007 Order to the General Assembly on January 30, 2007 along with Reorganization Plan No. 1. Reorganization Plan No. 1 was not included in the record before this court. Because the parties appear to agree that the pertinent portions of Reorganization Plan No. 1 were identical to the language of the 2007 Order, our use of the term the 2007 Order refers to both Executive Order 07–05 and the Reorganization Plan No. 1.

ods for conducting breath alcohol tests, his test did not comply with Sections 577.020–577.041 (specifically, Sections 577.020.3, .4, 577.026.1, .2, and 577.037) and is therefore inadmissible. Schneider asserts that his position is supported by: (1) the language of the 2007 Order; (2) Sections 26.500–26.540, which authorize a governor to transfer agency functions via executive order; (3) subsequent executive orders directing MoDOT to transfer the BAP to DHSS; and (4) subsequent agreements between DHSS and MoDOT that DHSS would continue to administer the BAP.[5]

In response, the Director does not dispute that an admissible breath alcohol test must comply with Sections 577.020–577.041, but rather argues that Schneider's test did not violate Sections 577.020–577.041 because neither the 2007 Order nor Sections 26.500–26.540 required that DHSS's responsibilities for the BAP transfer immediately to MoDOT on August 28, 2007. The Director further contends that Schneider's test was admissible because DHSS lawfully administered the BAP at the time of Schneider's test and therefore Schneider's test, performed by a person who possessed a DHSS-issued permit and acted pursuant to DHSS's methods, complied with Sections 577.020–577.041.

### 1. The 2007 Order

Schneider argues that the language of the 2007 Order supports his contention that DHSS's responsibilities for the BAP transferred to MoDOT on August 28, 2007. Specifically, Schneider contends that the 2007 Order became effective on August 28, 2007, and therefore MoDOT, rather than DHSS, became obligated immediately on that date to issue permits and to promulgate regulations governing breath alcohol tests. Thus, Schneider argues, in essence, that, unless a person held a MoDOT-issued permit as of August 28, 2007 and thereafter, he or she could not administer an admissible breath alcohol test.

Schneider focuses heavily on language in the 2007 Order providing that "this Order shall become effective no sooner than August 28, 2007, . . ." Clearly, by its plain language, the 2007 Order states that August 28, 2007 is its earliest effective date. However, Schneider's focus on determining the earliest effective date of the 2007 Order does not assist in resolving the relevant issue here. The critical issue is the nature of the activities the Governor ordered DHSS and MoDOT to commence "no sooner than August 28, 2007."

To resolve this issue, we carefully review the language of the 2007 Order. In the 2007 Order, Governor Blunt directs DHSS and MoDOT *"to cooperate to "* transfer the "pertinent vestiges" of the BAP. (emphasis added). In addition, explicitly acknowledging that the transfer of the operation of the BAP could not happen immediately, Governor Blunt orders DHSS and MoDOT "to cooperate to . . . [d]evelop mechanisms and processes necessary to effectively transfer the [BAP] to [MoDOT]." As defined by the dictionary, "develop" means "bring into being gradually." The American Heritage Dictionary 496 (4th ed.2006). Similarly, "process" is defined as "a series of actions, changes, or functions bringing about a result." *Id.* at 1398. The 2007 Order's use of the words "develop" and "processes" clearly contemplates a gradual

---

**5.** In his point, Schneider also contends that non-compliance with the relevant statutory sections resulted in a lack of implied consent, rendering the test inadmissible. Because our Supreme Court in *Reed,* 184 S.W.3d at 567, held that non-compliance with the relevant statutory sections is alone sufficient to render a blood alcohol test inadmissible, and because Schneider's only support for his proposition, *State v. Setter,* 721 S.W.2d 11 (Mo.App. W.D. 1986), is entirely unpersuasive, we decline to further address this argument.

effort resulting in DHSS's transfer of the operation of the BAP to MoDOT. Moreover, the use of the modifier *"effectively"* when referring to the transfer of the BAP to MoDOT connotes a concern and appreciation for the importance of maintaining the BAP during the transfer period. (emphasis added). Simply put, an executive order requiring two agencies "to cooperate to ... [d]evelop mechanisms and processes to effectively transfer" the operation of the BAP cannot be logically construed to immediately transfer the operation of the BAP on a certain date, as Schneider contends.

Consistent with the above-quoted language, none of the remaining provisions of the 2007 Order support a conclusion that DHSS's responsibility for the operation of the BAP transfer to MoDOT on a specific date. The 2007 Order also provides that DHSS and MoDOT are *"to cooperate to ...* transfer all the authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other vestiges of the [BAP] from [DHSS] to the [MoDOT], by Type I transfer, as defined under the Reorganization Act of 1974." (emphasis added).[6] The Omnibus State Reorganization Act does not contain language mandating that a transfer of agency functions under a Type I transfer occurs by a specific date. Rather, the language describes only *what* is trans-ferred to the new department or division, not *when* the transfer occurs.

Finally, the 2007 Order directs DHSS and MoDOT "to cooperate to ... [t]ransfer the responsibility for staff support for the [BAP] from [DHSS] to [MoDOT] ... [and] [t]ake the steps necessary to maintain compliance with federal requirements, so as not to jeopardize federal financial participation with this consolidation." Again, this language does not mandate a specific date for the transfer of the operation of the BAP from DHSS to MoDOT, rather by directing the agencies to cooperate in the transfer, Governor Blunt clearly intended a process that maintained the continuity of the operation of the BAP.

### 2. Sections 26.500–26.540

In further support of his contention that the 2007 Order resulted in the immediate transfer of DHSS's responsibilities for the BAP to MoDOT on August 28, 2007, Schneider relies on Missouri case law construing executive orders implemented under Sections 26.500–26.540, which authorize a governor to transfer agency functions through "reorganization plans." Specifically, Schneider contends that Missouri courts construing such executive orders have held that the contemplated transfer of authority between agencies occurred immediately on the effective date of the executive order. We find that Schneider's contention is not supported by the language of

---

6. Section 1, subsection 7(1)(a) of the Omnibus State Reorganization Act of 1974 states:

> Under this act a **"type I transfer"** is the transfer to the new department or division of all the authority, powers, duties, functions, records, personnel, property, matters pending and all other pertinent vestiges of the existing department, division, agency, board, commission, unit, or program to the director of the designated department or division for assimilation and assignment within the department or division as he shall determine, to provide maximum efficiency, economy of operation and optimum

service. All rules, orders and related matter of such transferred operations shall be made under direction of the director of the new department.

(emphasis in the original). The Omnibus State Reorganization Act of 1974 "has never been assigned a section number within any official statutory compilation since its passage, including RSMo 2000." *State ex rel. Dep't of Soc. Servs., Family Support Div. v. K.L.D.,* 118 S.W.3d 283, 288 n. 11 (Mo.App. W.D.2003). The statute, however, may be found on page 9392 of Volume 15 of RSMo 2000, listed as "Appendix B." *Id.*

Sections 26.500–26.540 and that the case law cited by Schneider is distinguishable.

Sections 26.500–26.540 authorize a governor to implement "reorganization plans" via executive order for the purpose of, among other things, transferring functions between executive agencies.[7] *See Kinder v. Holden,* 92 S.W.3d 793, 808 (Mo.App. W.D.2002). First, Sections 26.500, 26.510, and 26.520 set forth detailed procedures for implementing such reorganization plans. *See K.L.D.,* 118 S.W.3d at 287–89 (discussing the procedure for implementing a reorganization plan under Sections 26.500–26.520). Second, Section 26.530 declares that a validly implemented reorganization plan "shall be considered for all purposes as the equivalent in force, effect and intent of a public act of the state. . . ." Last, Section 26.540 limits reorganization plans to only those that relate to "abolishing or combining agencies in the executive branch of the state government or to changing the organization thereof or the *assignment of functions thereto.*" (emphasis added). Section 26.540 further requires that "[e]ach [reorganization] plan shall contain such provisions as are necessary to assure the uninterrupted conduct of the governmental services and functions affected by the proposed reorganization plan."

The provisions in Sections 26.500–26.540 do not contain a requirement that an assignment of agency functions under a reorganization plan occur on a specific date. More importantly, adoption of Schneider's interpretation of the 2007 Order would require us to ignore the explicit objective of Section 26.540 to assure "the uninterrupted conduct of the governmental services and functions affected by the proposed reorganization plan." Given that by virtue of the 2007 Order, August 28, 2007

was the earliest date DHSS and MoDOT could begin cooperating to develop "the mechanisms and processes to effectively transfer" the BAP, clearly those "mechanisms and processes" would not have been in place on August 28, 2007. If, as Schneider, for all practical purposes, argues, a DHSS-issued permit and DHSS's promulgated methods immediately became void on August 28, 2007, the BAP would effectively cease to operate. Reading the 2007 Order to require immediate transfer of the operation of the BAP from DHSS to MoDOT on August 28, 2007 is, thus, inconsistent with the objective of Section 26.540 to assure "uninterrupted conduct" of governmental services. In the absence of specific language in the 2007 Order mandating such a result, we decline to interpret the 2007 Order in such a way that it conflicts with the objectives of Section 26.540.

In support of his position to the contrary, Schneider contends that *K.L.D.* is directly on point. 118 S.W.3d 283. In *K.L.D.,* the executive order at issue created the Family Support Division and commanded the Department of Social Services to, *inter alia,* transfer all "authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other pertinent vestiges of the Division of Child Support Enforcement to the Family Support Division." *Id.* at 285. The order stated that it "shall become effective no sooner than August 28, 2003." *Id.* The *K.L.D.* court held that the order "became effective on August 28, 2003, . . . [and] that all of the authority, powers, duties, functions, records, personnel, property, matters pending and all other pertinent vestiges of the Division of Child Support Enforcement now lawfully rest with [the Family Support Division]." *Id.* at 289–90.

---

7. Both parties agree, and the record demonstrates, that the 2007 Order constituted a re-organization plan within the meaning of Sections 26.500–26.540.

Schneider contends that consistent with *K.L.D.*, all of the functions and authority of the BAP "fully vested" in MoDOT on the 2007 Order's August 28, 2007 effective date. The holding in *K.L.D.*, however, is not instructive here because the language of the 2007 Order and the order in *K.L.D.* significantly differed. Most importantly, the order in *K.L.D.* contained no language comparable to the 2007 Order's directive that DHSS and MoDOT "cooperate to develop mechanisms and processes necessary to effectively transfer" the BAP to MoDOT. *See id.* at 295–96 (setting forth the full text of the executive order). Additionally, the record in *K.L.D.* did not demonstrate that, as here, there was a significant risk of an interruption of government functions.

Schneider further relies on *Flores v. Reagen*, 792 S.W.2d 1 (Mo.App. W.D.1990) in support of his position that DHSS's "authority and power" to administer the BAP was "abolished" on the 2007 Order's August 28, 2007 effective date. *Flores* is equally of no assistance in resolving the issue in this appeal because, like *K.L.D.*, the executive order at issue did not contain the critical language operative in the 2007 Order. Specifically, the executive order at issue in *Flores* did not direct the two agencies "to cooperate to ... [d]evelop mechanisms and processes to effectively transfer" the powers of the former agency to the new agency. Rather, the executive order provided merely that the former agency's powers and duties were transferred to the new agency and that the "power of [the former agency] was abolished." *Id.* at 2.

### 3. *Subsequent Executive Orders*

Schneider argues that it is clear that DHSS's responsibilities for the BAP transferred from DHSS to MoDOT on August 28, 2007 because "[i]t defies common sense to believe that there would be a need for two additional executive orders transferring the BAP back to DHSS if the transfer never occurred." Schneider's argument relies on Executive Orders 08–29 and 10–15, one signed by Governor Blunt on September 12, 2008 and one signed by Governor Nixon on January 29, 2010, respectively, ordering MoDOT to transfer the BAP to DHSS. We find that these subsequent executive orders are not inconsistent with our determination that the 2007 Order did not result in an immediate transfer of the operation of the BAP from DHSS to MoDOT on August 28, 2007. Because the 2007 Order directed DHSS and MoDOT to cooperate to "develop mechanisms and processes necessary to effectively transfer" the BAP from DHSS to MoDOT, it is reasonable to conclude that the subsequent executive orders were appropriate to reverse the 2007 Order's directives.

### 4. *DHSS and MoDOT's Agreements*

Schneider argues that, assuming DHSS no longer had authority to operate the BAP after August 28, 2007, MoDOT may not delegate its responsibilities for the BAP to DHSS by agreement. In his argument, Schneider refers to a pair of contracts executed by DHSS and MoDOT on September 23, 2008 and July 1, 2009, providing that DHSS would continue to administer the BAP. We need not decide whether the contracts were effective to transfer the BAP to DHSS because the argument is based on the faulty premise that the 2007 Order operated to immediately transfer the operation of the BAP to MoDOT on August 28, 2007. Point denied.

### Conclusion

We find no basis to conclude Schneider's breath alcohol test failed to comply with Sections 577.020.–577.041, such that the trial court erred in admitting the results of the test. The judgment of the trial court

upholding the suspension of Schneider's driving privileges is affirmed.

GARY M. GAERTNER, JR., P.J., and MARY K. HOFF, J., concur.