**STATE of Missouri, Respondent,**

v.

**Pren B. ROSS, Appellant.**

**No. WD 71872.**

Missouri Court of Appeals,
Western District.

May 17, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2011.

Application for Transfer
Denied Aug. 30, 2011.

Jeffrey S. Eastman, Gladstone, MO, for appellant.

Jayne T. Woods, Jefferson City, MO, for respondent.

Before Division Four: LISA WHITE HARDWICK, Chief Judge, Presiding, JAMES M. SMART, Judge and GREGORY GILLIS, Special Judge.

LISA WHITE HARDWICK, Chief Judge.

Pren Ross appeals his conviction for driving while intoxicated. He contends the circuit court erred in admitting the results of a breathalyzer test. For reasons explained herein, we find no error and affirm the judgment of conviction.

## FACTUAL AND PROCEDURAL HISTORY

On May 23, 2009, Highway Patrol Corporal Tom Ziegler stopped Ross on Highway 46 for failing to wear a helmet while driving a motorcycle. Ziegler noticed Ross's speech was slurred, his eyes were bloodshot and glassy, and he smelled of intoxicants. Ross admitted to drinking approximately four beers and agreed to submit to a field sobriety test. He showed positive signs of intoxication during the horizontal gaze nystagmus test, the counting backwards test, the portable breath test, the one-leg stand test, and the walk-and-turn test. Ziegler arrested Ross, explained his *Miranda* rights,[1] and transported him to the sheriff's office.

At the sheriff's office, Ziegler read Ross the Implied Consent Law.[2] Ziegler gave Ross twenty minutes to contact an attorney, but Ross was unable to reach anyone. Ross consented to a breathalyzer test, the results of which indicated that his blood alcohol content was 0.16%.

Ross was charged with driving while intoxicated, a violation of Section 577.010.[3] At the bench trial, Ross objected to the admission of the breathalyzer results on foundational grounds, arguing that the test results were not admissible pursuant to the Implied Consent Law. Ross asserted that Ziegler's permit to operate the breathalyzer, issued by the Missouri Department of Health and Senior Services ("DHSS") on December 3, 2007, had been invalidated by Executive Order 07–05, which, he argued, had transferred legal authority to regulate the Breath Alcohol Program ("BAP") from DHSS to the Missouri Department of Transportation ("MoDOT") prior to the issuance of Ziegler's permit and prior to Ross's testing. The circuit court overruled the objection and admitted the breathalyzer results.

Ross was convicted and sentenced to ten days in jail. The circuit court suspended execution of the sentence and placed Ross

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Pursuant to Section 577.020.1, any person who drives on a public highway and is arrested for driving while intoxicated is deemed to have consented to a chemical test to determine blood alcohol content. The request to submit to a chemical test "shall include the reasons of the officer for requesting the person to submit to a test and also shall inform the person that evidence of refusal to take the test may be used against such person and that the person's license shall be immediately revoked upon refusal to take the test." § 577.041.1. "This advice is often referred to as the Implied Consent Law advice." *Bland v. Dir. of Revenue*, 324 S.W.3d 451, 453 n. 2 (Mo.App.2010).

3. All statutory citations are to RSMo 2000, as updated by RSMo Cum.Supp.2010, unless otherwise indicated.

on probation for eight months. Ross appeals the conviction.

## ANALYSIS

In his sole point on appeal, Ross contends the circuit court erred in overruling his objection to the breathalyzer test results. He argues the evidence was inadmissible because Corporal Ziegler did not have a valid permit to operate the breathalyzer due to the effects of Executive Order 07–05.

■ "The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." *Nelson v. Waxman,* 9 S.W.3d 601, 603–04 (Mo. banc 2000). Such abuse occurs when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Id.* at 604.

Provisions of Chapter 577 formalized the common law foundation for the introduction of blood alcohol analysis evidence. *Potts v. State,* 22 S.W.3d 226, 230 (Mo.App. 2000). Chapter 577 requires the "state department of health and senior services [to] approve satisfactory techniques, devices, equipment, or methods to be considered valid pursuant to the provisions of sections 577.019 to 577.041 and [to] establish standards to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation." § 577.020.4. The chemical analysis of a person's blood alcohol content is admissible as evidence and a blood alcohol content of 0.08% is prima facie evidence of intoxication when the chemical analysis is "performed as provided in sections 577.020 to 577.041 and in accordance with methods and standards approved by the state department of health and senior services." § 577.037.1, .4.

■ "[T]he state must demonstrate absolute and literal compliance with statutory provisions contained in Chapter 577 regulating the manner in which blood alcohol tests are administered prerequisite to introducing the test results into evidence." *State v. Regalado,* 806 S.W.2d 86, 88 (Mo. App.1991). Thus, in order to lay the proper foundation for the admission of breathalyzer results pursuant to Chapter 577, the State must demonstrate the test was performed: "(1) by following the approved methods and techniques of the Department of Health; (2) by a person holding a valid permit; and (3) on equipment and devices approved by the Department of Health." *Potts,* 22 S.W.3d at 230 (*quoting Wisdom v. Dir. of Revenue,* 988 S.W.2d 127, 129 (Mo.App.1999)).

On January 30, 2007, Governor Blunt issued Executive Order 07–05, a reorganization plan that directed:

... [DHSS] and [MoDOT] *to cooperate to:*

1. Transfer all the authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other pertinent vestiges of [BAP] from [DHSS] to [MoDOT], by Type 1 transfer, as defined under the Reorganization Act of 1974; and

2. Develop mechanisms and processes necessary to effectively transfer [BAP] to [MoDOT]; and

3. Transfer the responsibility for staff support for [BAP] from [DHSS] to [MoDOT]; and

4. Take the steps necessary to maintain compliance with federal requirements, so as not to jeopardize federal financial participation with this consolidation.

This Order shall become effective no sooner than August 28, 2007, unless disapproved within sixty days of its submis-

sion to the First Regular Session of the 94th General Assembly.

(emphasis added).

On September 12, 2008, Governor Blunt issued Executive Order 08–29 in an effort to reverse the transfer process initiated by Executive Order 07–05. Executive Order 08–29 stated that "unforeseen administrative issues with the transfer made by Executive Order 07–05 ha[d] made the transfer inefficient and not cost effective" and indicated that "[DHSS] continues to administer [BAP]." The order mandated that MoDOT transfer all powers to administer BAP back to DHSS. However, the order was ineffective because it was submitted during a special session of the legislature, rather than a regular session.

On January 29, 2010, Governor Nixon issued Executive Order 10–15, which explained that Executive Order 07–05 provided for the transfer of BAP from DHSS to MoDOT, however, "unforeseen administrative issues made the transfer inefficient and not cost effective." The order declared that "[DHSS] has the necessary expertise to administer [BAP]" and ordered that MoDOT transfer all powers to administer BAP back to DHSS. This reorganization plan reversed Executive Order 07–05 and became effective August 28, 2010.

Ross was arrested for driving while intoxicated and consented to the breathalyzer test on May 23, 2009, while Executive Order 07–05 was in effect. Ross argues that Executive Order 07–05, upon its effective date, abrogated the authority of DHSS to administer BAP and invalidated all previous rules, regulations, and permits promulgated and issued by DHSS. Thus, he argues that the results of his breathalyzer test were inadmissible because: 1) Ziegler's permit to operate the breathalyzer had been issued by DHSS rather than MoDOT; 2) MoDOT did not promulgate any of its own regulations providing for

the maintenance and operation of breathalyzer devices; and 3) such failures by MoDOT render Ross's implied consent to the breathalyzer testing invalid as a matter of law.

■ Reorganization plans allow the governor to dissolve or combine executive agencies, and to change an agency's organization or assignment of functions. § 26.540. The purpose of the Omnibus State Reorganization Act of 1974 is "to provide for the improved accountability in performance of service to the citizens of the state and for the most efficient and economical operations possible in the administration of the executive branch of the state government." *Omnibus State Reorganization Act of 1974 (OSRA);* Appendix B § 1.4 RSMo 2000. A reorganization plan becomes effective "not sooner than ninety days after the final adjournment of the session of the legislature to which it is submitted, unless it is disapproved within sixty days of its submission." § 26.510.

The Eastern District recently considered the effects of Executive Order 07–05 on the admission of breathalyzer results in *Schneider v. Dir. of Revenue,* 339 S.W.3d 533 (Mo.App.E.D.2011). In *Schneider,* which involved an administrative license revocation, the trial court overruled the driver's foundational objection to the admission of breathalyzer results. *Id.* at 535. On appeal, the driver contended the breathalyzer results were inadmissible because the test was performed, while Executive Order 07–05 was in effect, by a police officer holding a permit issued by DHSS. *Id.* at 535–36. The driver argued that Executive Order 07–05 had immediately transferred BAP-related authority from DHSS to MoDOT, MoDOT had failed to promulgate its own regulations for conducting breathalyzer tests, and the officer lacked a MoDOT-issued permit. *Id.*

In its analysis, the Eastern District considered the language of Executive Order 07–05, which instructed the agencies "to cooperate to . . . [t]ransfer all the . . . pertinent vestiges of [BAP] from [DHSS] to [MoDOT] . . . and . . . [d]evelop mechanisms and processes necessary to effectively transfer [BAP] to [MoDOT]." The court determined "[t]he 2007 Order's use of the words 'develop' and 'processes' clearly contemplates a gradual effort resulting in DHSS's transfer of the operation of the BAP to MoDOT." *Id.* at 536–37 (*citing* THE AMERICAN HERITAGE DICTIONARY 496 (4th ed.2006) for the proposition that " 'develop' means 'bring into being gradually' " and " 'process' is defined as 'a series of actions, changes, or functions bringing about a result' "). The court pointed out that "the use of the modifier *'effectively'* when referring to the transfer . . . connotes a concern and appreciation for the importance of maintaining the BAP during the transfer period." *Id.* In determining the admission of the breathalyzer results was not improper and affirming the trial court's judgment, the Eastern District explained "an executive order requiring two agencies 'to cooperate to . . . [d]evelop mechanisms and processes to effectively transfer' the operation of the BAP cannot be logically construed to immediately transfer the operation of the BAP on a certain date" because "Governor Blunt clearly intended a process that maintained the continuity of the operation of the BAP." *Id.* at 537.[4] We agree with the Eastern District's analysis and conclusion.

In this case, at the time of Ross's testing, Ziegler held a DHSS-issued Type II permit to operate and maintain the breathalyzer device used to test Ross's blood alcohol content. As explained in *Schneid-er*, Executive Order 07–05 on its effective date did not result in an immediate transfer of BAP-related authority from DHSS to MoDOT. The order merely authorized the process of the transfer, which was never fully implemented by the agencies. Thus, the fact that Ziegler's permit was issued by DHSS rather than MoDOT and the fact that MoDOT did not promulgate its own BAP-related rules does not render Ross's implied consent to breathalyzer testing invalid as a matter of law. The circuit court did not err in admitting the results of Ross's breathalyzer test. The point on appeal is denied.

## CONCLUSION

We affirm the judgment of conviction.

All Concur.

---

4. The Eastern District also explained that Executive Orders 08–29 and 10–15 are not inconsistent with its determination that Executive Order 07–05 did not immediately transfer all BAP-related authority from DHSS to MoDOT because these subsequent orders were intended to reverse the directives of Executive Order 07–05. *Schneider*, 339 S.W.3d at 539.