Mark GRAFEMAN, Respondent,

v.

DIRECTOR OF REVENUE, Appellant.

No. WD 72551.

Missouri Court of Appeals, Western District.

June 7, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2011.

Application for Transfer Denied Aug. 30, 2011.

Trevor Bossert, Jefferson City, MO, for Appellant.

Carl M. Ward, Washington, MO, for Respondent.

Before: MARK D. PFEIFFER, P.J., THOMAS H. NEWTON, and ALOK AHUJA, JJ.

THOMAS H. NEWTON, Judge.

The Director of Revenue appeals the trial court's judgment in favor of Mr. Mark Grafeman reinstating his driver's license. The Director contends that the trial court erred in excluding the blood-alcohol content (BAC) test results from the breathalyzer and its accompanying maintenance report because the documents were lawful. We reverse and remand.

### Factual and Procedural Background

On February 18, 2009, Mr. Grafeman was arrested for driving while intoxicated. Mr. Grafeman submitted a breath sample into the DataMaster Breathalyzer, which reported a BAC level of .226. Consequently, the Director suspended Mr. Grafeman's driver's license.

Mr. Grafeman filed a petition for trial *de novo* in the circuit court. At the trial on March 1, 2009, Mr. Grafeman filed a written objection to the admission of the DataMaster's test results and its maintenance report. Mr. Grafeman argued that the documents should not be admitted because the permits of the officers performing the test and the maintenance on the DataMaster were void. Mr. Grafeman claimed that the permits were void because the Department of Health and Senior Services (DHSS) issued them on September 10, 2008, and October 3, 2008, after Executive Order 07–05 had transferred the authority to administer the Breath Alcohol Program (BAP) to the Department of Transportation (MoDOT). He further claimed that BAP would not return to DHSS until August 28, 2010, via another executive order. The executive orders and the accompanying reorganization plans were admitted into evidence.

In response, the Director argued that the officers' permits were valid because DHSS had retained the authority to issue the permits for BAP after Executive Order 07–05 became effective, via Memorandums of Understanding (MOU's), which were agreements between the Missouri Highways and Transportation Commission and DHSS in 2008 and 2009. The MOU's were admitted into evidence.

The circuit court agreed with Mr. Grafeman and excluded the test results and maintenance report. Consequently, the trial court reinstated Mr. Grafeman's driving privileges. The Director appeals, raising three points.

### Standard of Review

██ We will affirm the trial court's judgment if substantial evidence supports it, it is not against the weight of the evidence, and it correctly declares and applies the law. *Vanderpool v. Dir. of Revenue*, 226 S.W.3d 108, 109 (Mo. banc 2007). We review the admission or exclusion of evidence for an abuse of discretion. *See id.*

### Legal Analysis

██ In its first point, the Director argues the trial court erroneously declared and applied the law and went against the weight of the evidence in excluding the test results and maintenance report because the reorganization ordered by the 2007 executive order did not take place by operation of the law and, therefore, DHSS retained its power to administer BAP. Because the first point is dispositive, we do not address the other points.

██ To prevail on a challenge to the suspension of a driver's license pursuant to section 302.505,[1] the Director had the burden to show by preponderance of the evidence: (1) that probable cause existed for the arrest and (2) that Mr. Grafeman's blood alcohol level was eight-hundredths of one percent or more by weight. *See id.* at 109–110; § 302.505. At trial, Mr. Grafeman stipulated that he did not have an issue with the validity of his arrest. Illegal blood alcohol content may be shown by chemical analysis of a person's breath, blood, saliva, or urine using the proper methods. § 577.012.2. Blood alcohol test results are admissible when the Director shows "that the test was performed: (1) following approved techniques and methods of the division of health, (2) by an operator holding valid permit, (3) on equipment and devices approved by the division." *Vanderpool*, 226 S.W.3d at 109–10. Mr. Grafeman argued that the test results and maintenance report were inadmissible because the officers' permits were invalid. Thus, the only issue before the trial court was whether the permits were valid.

The trial court found that the executive order *transferred* authority to issue permits from DHSS to MoDOT based on the following language from Executive Order 08–29:

"Whereas, Executive Order 07–05 transferred ... the [BAP] from [DHSS] to [MoDOT]," and "Whereas, unforeseen administrative issues with the transfer made by Executive Order 07–05 ha[d] made the transfer inefficient and not cost effective ..." and "Whereas, Executive Order 07–05 became effective on August 28, 2007."

The trial court found that because of the transfer any permits issued by DHSS were "without legal effect." It therefore concluded that the officers' permits issued by DHSS were invalid and, consequently, excluded the maintenance report and the

---

1. All statutory references are to RSMo 2000 and the Cumulative Supplement 2010, unless otherwise indicated.

test results. We are thus required to determine the legal effect Executive Order 07–05, assigning BAP to MoDOT from DHSS, had on DHSS's statutory authority to issue permits and otherwise administer the program.

This appellate court's Eastern District recently addressed this identical issue in *Schneider v. Dir. of Revenue*, 339 S.W.3d 533 (Mo.App. E.D.2011). The *Schneider* court held that Executive Order 07–05 did not immediately transfer BAP to MoDOT to divest DHSS of its authority to administer BAP on its effective date of August 28, 2007, because its specific language ordering the agencies "to cooperate" in order "to effectively transfer" BAP indicated a gradual transition. *Id.* at 536–37. It further held that to find an automatic transfer on the effective date would discontinue the operation of BAP until MoDOT could administer the program and would be inconsistent with section 26.540, which requires the governmental services and functions to continue without interruption during any reorganization. *Id.* at 537–38. Finally, it concluded that the subsequent executive orders stating a transfer had occurred were issued to reverse the directives for a transfer, as opposed to reversing a transfer. *Id.* at 538–39. For the foregoing reasons, the *Schneider* court concluded that the permit issued by DHSS was valid and the test results were thus admissible. *Id.* at 539–40; *see also Downs v. Dir. of Revenue*, 344 S.W.3d 818 (Mo.App.S.D.2011)

(applying *Schneider*); *Carney v. Dir. of Revenue*, 344 S.W.3d 802 (Mo.App.S.D. 2011) (applying *Schneider*); *Griggs v. Dir. of Revenue*, 344 S.W.3d 799 (Mo.App.S.D. 2011); *State v. Ross*, 344 S.W.3d 790 (Mo. App.W.D.2011) (applying *Schneider*). We agree with the Eastern District's analysis and conclusion.[2]

Applying this reasoning, we find that the trial court erred in reading Executive Order 07–05 to have automatically transferred the operation of BAP to MoDOT, and to have divested DHSS of all authority, power, and duties to administer BAP on August 28, 2007. Because Executive Order 07–05 only authorized the transfer process and the agencies did not implement the reorganization plan, DHSS still had the authority to issue permits and perform other administrative functions for BAP. The trial court erred in its declaration and application of the law when it determined that the officers' permits were invalid because DHSS had issued them. Hence, the trial court abused its discretion in excluding the documents on that ground. The Director's first point is granted.

## Conclusion

Therefore, we reverse the trial court's judgment and remand the case for a new trial, where Mr. Grafeman should be al-

---

**2.** This conclusion is consistent with *State ex rel. Department of Social Services, Family Support Division v. K.L.D.*, 118 S.W.3d 283 (Mo.App. W.D.2003). In *K.L.D.*, we explained that under Missouri law, an executive order directing a transfer between agencies is not the law, although it has the force of law. This means that once an executive order becomes effective, it authorizes the newly created agency to subsume or step into the shoes of an established agency. *Id.* at 290–92. However, "[t]he Order does not … amend [the statutes] by substituting [the new agency]

everywhere [the established agency] appears." *Id.* at 291. We concluded that once an executive order becomes effective through the legislature's failure to disapprove it, its reorganization plan could then be implemented without further legislative action. *Id.* at 292. Accordingly, Executive Order 07–05 did not amend the statutes. Thus, DHSS retained the statutory authority to issue permits and perform other administrative functions for BAP until the reorganization plan was implemented.

lowed to present other defenses in the case.

PFEIFFER, P.J., and AHUJA, J., concur.