**STATE of Missouri, Plaintiff–Respondent,**

v.

**Michael L. SEITZ, Defendant–Appellant.**

**No. SD 31639.**

Missouri Court of Appeals, Southern District, Division One.

Oct. 24, 2012.

Stacie Bilyeu, for Appellant.

Dan Patterson, Mallory A. Revel, for Respondent.

Before LYNCH, P.J., RAHMEYER, J., and FRANCIS, J.

PER CURIAM.

Michael L. Seitz ("Appellant") was charged with, and found guilty in a trial to the court of, the class B misdemeanor of driving while intoxicated on January 21, 2010, in violation of section 577.010.[1] In his sole point on appeal, Appellant challenges the sufficiency of the evidence to support a finding that Appellant was intoxicated beyond a reasonable doubt. We reject Appellant's challenge and affirm the trial court's judgment.

At about 7:30 p.m., on January 21, 2010, Deputy Andrew Long with the Greene

---

1. All references to statutes are to RSMo Cum. Supp.2009, unless otherwise specified. We note that section 577.010 was amended in June 2010, subsequent to Appellant's offense, with the amendment effective 90 days after adjournment. Appellant was also charged with speeding, but the State dismissed the speeding charge at the conclusion of its evidence in chief.

County Sheriff's Office observed a black, GMC Denali, which was speeding, cross a center line on Farm Road 163 in Greene County. Deputy Long activated his siren and lights, stopped the vehicle, and asked Appellant, the driver and only individual in the vehicle, for his license and insurance. Appellant did not stop promptly after Deputy Long activated his siren and lights, but rather turned left off Farm Road 163 and continued driving for a short distance before finally coming to a stop. Appellant provided Deputy Long with his license, but had difficulty removing the license from his wallet; the deputy asked Appellant "if he had anything to drink that evening," and Appellant replied "he wasn't going to lie, that he had."

Deputy Long returned to his patrol car, and requested that another officer come to his location. When he returned to Appellant's vehicle, he stood "right up against" the driver's door and smelled a "strong odor" of alcohol on Appellant's breath. Appellant's speech was "slurred" and his eyes were "watery" and "dilated." Based on these observations, Deputy Long "believed [Appellant] was intoxicated."

Deputy Long asked Appellant to step out of his vehicle to perform field sobriety tests. He administered the horizontal gaze nystagmus test in front of Appellant's vehicle with Appellant facing away from the lights on the patrol car and on Appellant's vehicle. Deputy Long observed lack of smooth pursuit, sustained nystagmus at maximum deviation, and onset of "nystagmus prior to a 45–degree angle" in both of Appellant's eyes, for a score of six out of six on the test. Deputy Long then asked Appellant to move to a nearby sidewalk to complete a "walk and turn" test. In the course of preparing to take the walk and turn test, Appellant was "swaying and staggering" to the point Appellant "nearly fell over." Appellant ultimately declined to complete the walk and turn test or take other field sobriety tests. Deputy Long then placed Appellant under arrest because he "believed [Appellant] was intoxicated."

Appellant produced contrary evidence; his witnesses included an expert on intoxication levels and two witnesses from the night of the arrest. Appellant's expert estimated Appellant's blood alcohol content at the time he was stopped "to be between 0.053 to 0.063 percent . . . within a reasonable degree of scientific certain[t]y." The estimate was based on information provided by defense counsel that Appellant had three beers and two shots in the roughly two and a half hours before Appellant was stopped, and "[h]ad not eaten much." The expert viewed the DVD of the stop, but the expert's copy of the DVD did not include audio.

The bartender who waited on Appellant the night of the offense testified that Appellant had two shots and three beers over a three and a half to four hour period and also purchased two beers for Appellant's female, business acquaintance. The business acquaintance testified that she had three beers that evening, and Appellant paid for two of the beers.

Following the trial, the trial court found Appellant guilty of driving while intoxicated in a docket entry on September 12, 2011. The docket entry stated:

Judgment: Court reviews trial notes and video. Court as fact-finder assesses the credibility, degree of responsiveness, relationship, interest and consistency of the witnesses. Court notes the evidence of [Appellant's] crossing the center line; delay in pulling over; admission of alcohol consumption; his manner of speech, behavior and refusals at the scene; and the other indications of impairment mentioned by the officer. Court also notes that [Appellant's] evidence included his

admitted consumption of several alcoholic beverages of different types over as much as a four hour period. Court also notes [Appellant's] expert did not review the entire police report nor the compelling audio portion of the video. The expert's testimony was also wholly dependent upon the accuracy and reliability of [Appellant's] report of his alcohol consumption provided long after the date of the incident. Court thus finds [Appellant] guilty beyond a reasonable doubt as to count I.

Our Supreme Court has described our standard of review as follows:

In reviewing the sufficiency of evidence, this Court limits its determination to whether a reasonable juror could have found guilt beyond a reasonable doubt. *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). In so doing, the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict. *Id.* As such, this Court will not weigh the evidence anew since "the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002).

*State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008).

■ Section 577.010.1 provides "[a] person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated ... condition." Section 577.001.3, RSMo Cum.Supp.2005, provides "a person is in an 'intoxicated condition' when he is under the influence of alcohol[.]" A person is under the influence of alcohol when "his use of alcohol impairs his ability to operate an automo-

bile." *State v. Schroeder*, 330 S.W.3d 468, 475 (Mo. banc 2011).

■ The State is not required to establish an actual measure of a defendant's blood alcohol content to prove the defendant was driving while intoxicated. *State v. Adams*, 163 S.W.3d 35, 37 (Mo.App. S.D.2005). "It is the fact, not the degree, of intoxication that is the significant issue to consider." *State v. Edwards*, 280 S.W.3d 184, 189 (Mo.App. E.D.2009). And, in the absence of a chemical analysis showing a defendant's blood alcohol content, the State may meet its burden of proof solely through the testimony of a witness who had a reasonable opportunity to observe the defendant. *State v. Rose*, 86 S.W.3d 90, 105 (Mo.App. W.D.2002); *Edwards*, 280 S.W.3d at 189 ("Intoxication may be proven by any witness who had a reasonable opportunity to observe Defendant's physical condition."). Even when a chemical analysis shows a defendant's blood alcohol content was less than .08 percent, the State may meet its burden to prove the defendant was driving while intoxicated if "[t]here is substantial evidence of intoxication from physical observations of witnesses or admissions of the defendant." Section 577.037.5(3), RSMo Cum.Supp. 2001; *Adams*, 163 S.W.3d at 36, 37 (where a trooper's testimony that the defendant's eyes were bloodshot, watery, and "had a poor reaction to light," the defendant had a "moderate odor" of intoxicants on his breath, the defendant admitted he had one beer earlier, and the defendant "performed poorly on all three" field sobriety tests was sufficient to overcome a breathalyzer test that showed the defendant's blood alcohol content was ".061"). A horizontal gaze nystagmus score of four or more points is "substantial evidence" the person taking the test is intoxicated. *Rose*, 86 S.W.3d at 97–98, 106; *State v. Burks*, 373 S.W.3d 1, 5

(Mo.App. S.D.2012) ("The existence of four indicates impairment.").

■ In this case, Deputy Long observed Appellant cross a center line. Appellant did not stop promptly after Deputy Long activated the siren and lights on his patrol car. Appellant acknowledged he had had something to drink that evening. Deputy Long smelled a "strong odor" of alcohol on Appellant's breath, Appellant's speech was "slurred," and his eyes were "watery" and "dilated." Appellant scored six points on the horizontal gaze nystagmus test. Appellant was "swaying and staggering" to the point Appellant "nearly fell over" in the course of preparing to take the walk and turn test. Appellant ultimately declined to complete the walk and turn test or take other field sobriety tests. Deputy Long "believed [Appellant] was intoxicated."

Further, this evidence was corroborated by Appellant's evidence that he had drunk beer and hard liquor on an empty stomach in the three to four hour period before the stop. The trial court was not required to believe Appellant's expert or the factual foundation for the expert's opinion. Viewed as we must in accordance with our standard of review, this evidence was sufficient to permit a reasonable fact finder to find Appellant was intoxicated beyond a reasonable doubt. Appellant's point is denied.

The trial court's judgment is affirmed.[2]

---

2. Pursuant to this Court's Special Rule 1(e), we have determined that oral argument would not be beneficial, deny oral argument, and adopt this opinion.