

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD77930 |
| | ) | |
| v. | ) | Opinion filed: November 10, 2015 |
| | ) | |
| CHRISTOPHER PICKERING, | ) | |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF DAVIESS COUNTY, MISSOURI
THE HONORABLE DAREN L. ADKINS, JUDGE**

Before Division Three: Joseph M. Ellis, Presiding Judge,
Gary D. Witt, Judge and Zel M. Fischer, Judge

Christopher Pickering appeals from his conviction in the Circuit Court of Daviess County of one count of the class B misdemeanor driving while intoxicated, § 577.010.[1] Appellant was sentenced to a term of ten days in the county jail. For the following reasons, the judgment of conviction and sentence is reversed, and the cause is remanded for a new trial or other further proceedings consistent with this opinion.

On the evening of November 24, 2013, the Missouri State Highway Patrol received a report of a white GMC pickup truck driving in a careless and imprudent manner in the northbound lane of I-35 near Cameron, Missouri. Shortly thereafter, Trooper John Gilliland saw a vehicle matching that description driving north on I-35 in

---

[1] All statutory references are to RSMo 2000 as updated through the 2013 Cumulative Supplement.

Daviess County and began to follow it. Trooper Gilliland saw the vehicle move halfway onto the outside shoulder of the road, return to the roadway, cross the line separating the two northbound lanes, and travel for a significant distance while occupying both lanes of traffic before returning to its original lane. The truck then abruptly turned onto Exit 61 without utilizing a turn signal. At that point, Trooper Gilliland activated his emergency lights and initiated a traffic stop of the vehicle.

Trooper Gilliland approached the truck and asked Appellant, the driver of the truck, for his license and insurance card. After smelling alcohol while speaking with Appellant, Trooper Gilliland asked Appellant to accompany him back to the patrol car. Trooper Gilliland noticed that, as Appellant walked around the patrol car on the shoulder of the road, he placed his hand on the patrol car to steady himself. Inside the patrol car, Trooper Gilliland observed a moderate amount of alcohol on Appellant's breath and that Appellant's eyes were glassy and bloodshot. He further noted that Appellant's speech was thick and slurred at times. When Trooper Gilliland asked Appellant if he had been drinking alcohol, Appellant responded that he had consumed two Bloody Marys at the Chiefs game.

Trooper Gilliland asked Appellant to submit to some field sobriety tests, and Appellant complied. While administering the horizontal gaze nystagmus test, Trooper Gilliland noted six out of six clues of intoxication. When asked to recite the alphabet starting at B and ending in Q, Appellant started with the letter C and skipped the letter P. When asked to count backward from 75 to 57, Appellant paused frequently and recited the number 70 twice. When counting and reciting the alphabet, Appellant's

2

speech was thick and slurred. Appellant then failed the one-leg-stand test and the walk-and-turn test.[2]

After performing the field sobriety tests, Trooper Gilliland arrested Appellant for driving while intoxicated and took him to the Daviess County Sheriff's Department for a breath test of his blood alcohol level. After being advised of the implied consent law, and after being allowed to phone his attorney, Appellant agreed to submit to a breath test, which was performed using a DataMaster machine. The breath test indicated that Appellant's blood alcohol level was .136 percent.[3] When further interviewed, Appellant admitted to having operated his truck and to having consumed three Bloody Marys.

On July 28, 2014, Appellant was tried by the court in the Circuit Court of Daviess County and found guilty of one count of driving while intoxicated. The court sentenced Appellant to a term of ten days in the county jail. Appellant brings two points on appeal.

In his first point, Appellant claims that the trial court erred in admitting into evidence the results of the DataMaster breath test of his blood alcohol level. He argues that the State failed to establish a sufficient foundation for its admission because no evidence was admitted into evidence establishing that the breath alcohol simulator used for verification and calibration of the DataMaster device had been certified against a National Institute of Standards and Technology traceable reference thermometer or thermocouple between January 1, 2013, and December 31, 2013, as required by 19 C.S.R. 25-30.051(4). Appellant's second point, while couched as a sufficiency of the

---

[2] The horizontal gaze nystagmus test, one-leg-stand test, and the walk-and-turn test "are the *only* scientifically validated and reliable field sobriety tests" recognized by the National Highway and Traffic Safety Administration. *State v. Browning*, 458 S.W.3d 418, 424-25 (Mo. App. W.D. 2015) (Witt, J., concurring) (emphasis in original).

[3] This result was obtained from the second breath sample provided by Appellant after his first sample was deemed invalid by the DataMaster machine. The print-outs reflecting the results of both tests were admitted into evidence at trial.

3

evidence claim of error, is, in actuality, Appellant's argument that he suffered prejudice as a result of the admission of the breath test results. He argues that it is clear that the trial court relied on the breath test results in finding him guilty and that, with the breath test evidence excluded, there is not enough evidence to support his conviction for driving while intoxicated. Because these points together constitute one claim of error, they will be addressed together.

"The admissibility of evidence lies within the sound discretion of the trial court and will not be disturbed absent abuse of discretion." *State v. Ostdiek*, 351 S.W.3d 758, 772 (Mo. App. W.D. 2011) (internal quotation omitted). "Such abuse occurs when the trial court's ruling is clearly against the logic of the circumstances and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Ross*, 344 S.W.3d 790, 792 (Mo. App. W.D. 2011).

"Provisions of Chapter 577 formalized the common law foundation for the introduction of blood alcohol analysis evidence." *Id*. "Chapter 577 requires the 'state department of health and senior services [to] approve satisfactory techniques, devices, equipment, or methods to be considered valid pursuant to the provisions of sections 577.019 to 577.041 and [to] establish standards to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation.'" *Ostdiek*, 351 S.W.3d at 772 (quoting *§ 577.020.4*). "The chemical analysis of a person's blood alcohol content is admissible as evidence and a blood alcohol content of 0.08% is prima facie evidence of intoxication when the chemical analysis is 'performed as provided in sections 577.020 to 577.041

4

and in accordance with methods and standards approved by the state department of health and senior services.'" ***Ross***, 344 S.W.3d at 792 (quoting ***§ 577.037.1***).

"Before the breathalyzer test results can be admitted into evidence, the State must demonstrate absolute and literal compliance with statutory provisions contained in Chapter 577 regulating the manner in which blood alcohol tests are administered." ***Ostdiek***, 351 S.W.3d at 772 (internal quotation omitted). "Thus, in order to lay the proper foundation for the admission of breathalyzer results pursuant to Chapter 577, the State must demonstrate the test was performed: (1) by following the approved methods and techniques of the Department of Health; (2) by a person holding a valid permit; and (3) on equipment and devices approved by the Department of Health."[4] ***Ross***, 344 S.W.3d at 792 (internal quotation omitted).

19 C.S.R. 25-30.051 provides:

> PURPOSE: This rule defines the standard simulator solutions or compressed ethanol-gas mixtures to be used in verifying and calibrating breath analyzers as well as the annual checks required on simulators used in conjunction with the standard simulator solution.
>
> *   *   *
>
> (4) Any breath alcohol simulator used in the verification or calibration of evidential breath analyzers with the standard simulator solutions referred to in sections (2) and (3) of this rule shall be certified against a National Institute of Standards and Technology (NIST) traceable reference thermometer or thermocouple between January 1, 2013, and December 31, 2013, and annually thereafter."

The State's evidence in the case at bar did not establish that this regulation had been followed. Both at the time of Appellant's arrest and on the date of trial, this regulation required that the breath alcohol simulator used to verify and calibrate the

---

[4] "Breath analyzers shall be operated strictly in accordance with the procedures set forth in 19 CSR 25-30.060." ***19 CSR 25-30.011(5)***.

5

DataMaster had to be certified against an NIST thermometer or thermocouple in 2013, and annually thereafter, if the standard simulator solutions listed in 19 C.S.R. 25-30.051(2) were used to verify and calibrate the device. The DataMaster used to test Appellant was in use in 2013. Appellant was tested with it on November 24, 2013. Prior to its use on Appellant, the DataMaster was subjected to a monthly maintenance check on November 11, 2013, with a breath alcohol simulator using one of the solutions listed in 19 C.S.R. 25-30.051(2). The plain language of 19 C.S.R. 25-30.051(4) required the breath alcohol simulator to be certified against a NIST thermometer or thermocouple sometime between January 1, 2013, and December 31, 2013, and annually thereafter. At trial, the State presented no evidence that the breath alcohol simulator was NIST certified in 2013. Absent evidence of such NIST certification, the State failed to establish a sufficient evidentiary foundation to support the admission of the breath test results. *Carter v. Dir. of Revenue*, 454 S.W.3d 444, 448 (Mo. App. W.D. 2015). Accordingly, the trial court erred in admitting those test results into evidence.

This Court, however, "reviews a trial court's decision to admit or exclude evidence for prejudice, not mere error." *State v. Oerly*, 446 S.W.3d 304, 310 (Mo. App. W.D. 2014). "[I]n a judge tried case, we presume that the trial judge was not prejudiced by inadmissible evidence and was not influenced by it in reaching a judgment unless it is clear from the record that the trial judge considered and relied upon the inadmissible evidence." *State v. Crews*, 406 S.W.3d 91, 94-95 (Mo. App. W.D. 2013) (internal quotation omitted).

6

In the case at bar, following closing arguments, the trial court stated:

> The Court does find there was probable cause for the stop, that the officer observed sufficient indicia of intoxication to support the arrest for driving while intoxicated. The Court finds there was a valid sample. It was admitted into evidence, a .136, which is sufficient to find the defendant guilty as charged of driving while intoxicated.

The trial court then asked if the parties wished for the court to go ahead and sentence Appellant or for sentencing to be set for a later date. These statements clearly reflect that the trial judge considered and relied upon the breath alcohol test results in rendering its verdict. Accordingly, prejudice has been sufficiently established, and the judgment must be reversed.

Appellant argues that, with the breath alcohol test results excluded, insufficient evidence was presented at trial to support his conviction and that this Court should order him discharged rather than remanding the case for further proceedings. The record in this case, however, contains sufficient evidence, if found credible, for a trier of fact to find that Appellant was driving while intoxicated even without a breath alcohol test. For this reason, as explained *infra*, despite the insufficiency of the evidentiary foundation for admission of the breath test results, the case must be remanded for a new trial or other proceedings consistent with this opinion. **State v. Major**, 815 S.W.2d 499, 501 (Mo. App. E.D. 1991).

"A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle in an intoxicated or drugged condition." **§ 577.010.1** (emphasis omitted). "[A] person is in an 'intoxicated condition' when he is under the influence of alcohol, a controlled substance, or drug, or any combination thereof." **§ 577.001.3** (emphasis omitted). "A person is under the influence of alcohol when 'his use of alcohol impairs

7

his ability to operate an automobile.'" ***State v. Seitz***, 384 S.W.3d 384, 387 (Mo. App. S.D. 2012) (quoting ***State v. Schroeder***, 330 S.W.3d 468, 475 (Mo. banc 2011)). "Any intoxication that in any manner impairs the ability of a person to operate an automobile is sufficient to sustain a conviction of driving while intoxicated." ***State v. Adams***, 163 S.W.3d 35, 37 (Mo. App. S.D. 2005).

"The State is not required to establish an actual measure of a defendant's blood alcohol content to prove the defendant was driving while intoxicated." ***Seitz***, 384 S.W.3d at 387. "It is the fact, not the degree, of intoxication that is the significant issue to consider." ***State v. Edwards***, 280 S.W.3d 184, 189 (Mo. App. E.D. 2009). "Intoxication consists of three components: impaired ability, presence of a proscribed substance in the defendant's body at the time of the offense, and a causal connection between the proscribed substance and the defendant's impaired ability." ***State v. Pilant***, 437 S.W.3d 838, 839 (Mo. App. S.D. 2014) (internal quotation omitted).

"Even in the absence of chemical tests establishing a defendant's BAC, the State may meet its burden to show intoxication through testimony of an alleged offender's physical manifestations of intoxication, such as bloodshot eyes and slurred speech, and through a defendant's difficulty performing the field sobriety tests."[5] ***State v. Gittemeier***, 400 S.W.3d 838, 841 (Mo. App. E.D. 2013). "Whether a person is intoxicated may be proven by any witness who had a reasonable opportunity to observe the person's physical condition." ***Pilant***, 437 S.W.3d at 839.

---

[5] Indeed, "[e]ven when a chemical analysis shows a defendant's blood alcohol content was less than .08 percent, the State may meet its burden to prove the defendant was driving while intoxicated if there is substantial evidence of intoxication from physical observations of witnesses or admissions of the defendant." ***Seitz***, 384 S.W.3d at 387 (internal quotation omitted).

In the case at bar, Trooper Gilliland testified that he observed Appellant driving his car in an erratic and dangerous manner, demonstrating an inability to remain in his lane of traffic and suddenly exiting the highway without signaling. He noted that Appellant's breath smelled moderately of alcohol, his eyes were bloodshot and glassy, and his speech was thick and slurred. Appellant admitted having consumed alcohol. When he was given the horizontal gaze nystagmus test, Appellant demonstrated six out of six clues of intoxication. Appellant then proceeded to fail the one-leg-stand test and the walk-and-turn test. Trooper Gilliland testified that the field sobriety test results indicated to him that Appellant was probably intoxicated. While the trial court could certainly reach the contrary conclusion, the foregoing evidence would clearly be sufficient to support Appellant's conviction. *See Adams*, 163 S.W.3d at 37 (sufficient evidence to support the defendant's conviction for driving while intoxicated was held to be present where, despite a breathalyzer test indicating that the defendant had a .061% blood alcohol level, the arresting officer's testimony reflected that the defendant had been involved in an automobile accident, had bloodshot and watery eyes, alcohol on his breath, performed poorly on three field sobriety tests, and admitted having consumed a beer); *State v. Rose*, 86 S.W.3d 90, 104 (Mo. App. W.D. 2002) (erroneous admission of opinion testimony regarding HGN testing was harmless in a jury trial where other evidence showed the defendant ran a red light, the officer noted that the defendant had alcohol on his breath and glassy eyes, the defendant failed three field sobriety tests, the defendant admitted having consumed two beers, and the defendant refused to take a breath test); *see also State v. Caines*, 427 S.W.3d 305, 309 (Mo. App. E.D. 2014) ("Even in the absence of definitive blood alcohol content evidence, intoxication can be

9

shown by the defendant's physical manifestations of intoxication, such as bloodshot eyes and slurred speech, and through a defendant's difficulty performing the field sobriety tests.") (internal quotation omitted).

Indeed, Appellant makes no attempt to go through the evidence and argue that no reasonable finder of fact could have found him to be intoxicated beyond a reasonable doubt based upon the evidence other than breath alcohol test results. Instead, Appellant argues that the trial court's statement at the end of trial reflects a finding by the trial court that there was insufficient evidence to find the defendant guilty beyond a reasonable doubt absent the breath alcohol test results. We simply cannot read that much into the trial court's comments. The trial court's finding that "the arresting officer observed sufficient indicia of intoxication to support the arrest for driving while intoxicated" does not equate to a finding that the evidence obtained prior to the arrest was insufficient to establish the defendant's guilt beyond a reasonable doubt. The trial court appears to have gone through a checklist of what was required for the breath test to be properly admitted into evidence and then relied upon the breath test results to find the defendant guilty. There is no clear indication from the comments that the trial court ever considered whether the evidence sans the breath test results sufficiently proved that Appellant was intoxicated.

For the foregoing reasons, the trial court's judgment of conviction and sentence is reversed, and the cause is remanded for a new trial or other further proceedings consistent with this opinion.

_____
Joseph M. Ellis, Judge

All concur.

10