

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | **WD76579** |
| | ) | |
| DOUGLAS E. OERLY, | ) | **FILED: October 28, 2014** |
| Appellant. | ) | |

**Appeal from the Circuit Court of Boone County**
**The Honorable Larry A. Bryson, Judge**

**Before Division Two: Victor C. Howard, P.J., and Alok Ahuja and Gary D. Witt, JJ.**

Following a bench trial, Douglas Oerly was convicted of the Class A misdemeanor of stealing in the Circuit Court of Boone County. Oerly appeals, arguing that the circuit court erred in excluding evidence concerning medical treatment he received on the day following the theft. We affirm.

### Factual Background

On September 21, 2012, a security employee at a Wal-Mart store in Columbia saw Oerly take a calculator with a $140.00 retail price off a store shelf, remove it from its packaging, shove the calculator down the front of his pants, and return the empty packaging to a shelf. Security personnel approached Oerly in a vestibule as he was attempting to exit the store. He was escorted to the security office and found to be in possession of the calculator and some juice; he had not paid for either item. While in the office, Oerly drank the juice and acted as though he was going to faint, but informed Wal-Mart's security personnel that he was "okay."

A Columbia police officer, Justin Riley, arrived and observed that Oerly was hunched forward with his elbows on his knees; Oerly stated that he did not feel well. Officer Riley had been a licensed emergency medical technician prior to becoming a police officer. He called for an ambulance. The paramedics who responded found that Oerly had high blood sugar. Oerly refused medical treatment.

Officer Riley transported Oerly to the Columbia Police Department for processing. Processing took approximately one hour during which Officer Riley observed Oerly. Officer Riley testified that Oerly appeared to be "aware of his surroundings and the situation he was in," and that he did not observe Oerly to be in medical distress at any time.

Oerly was released on bond. The following day, he sought treatment at the University of Missouri Hospital, was found to have high blood sugar (hyperglycemia), and was admitted for three days.

A bench trial was held. Oerly testified that he had been a diabetic since childhood. Because he was having difficulty paying for his prescription medications, Oerly testified that at the time of the theft he was trying to regulate his blood sugar on his own. He testified that, when his blood sugar was low, "[i]t's kind of like . . . being in an alien body. You have no control over it and you really don't know what you're doing." According to Oerly, having low blood sugar would eventually lead him to become unconscious or to have a seizure. Oerly testified that during prior episodes in which his blood sugar was low, he had gone into a store, picked something up, and walked out without paying.

Oerly testified that he stopped at the Wal-Mart on September 21 to get juice because he felt as if his blood sugar was "bottoming out." He testified that he had black spots in front of his eyes and felt "trembly." Oerly testified that he took some juice off of the shelf and drank it in an

office at the back of the store, but has no memory of what occurred between the time that he entered the store and when he drank the juice in the office. Oerly testified that after drinking the juice his vision cleared.

According to Oerly, the paramedics told him that his blood sugar level was at or above 500. Oerly testified that his blood sugar should normally be between 80 and 120. He testified that he refused medical attention at the time due to the cost, but that he sought and received medical treatment for his diabetes the day after the incident.

Defense counsel sought to elicit further testimony that Oerly had, in fact, been hospitalized from September 22 until September 24. The court sustained the State's objection on that ground that such evidence was irrelevant. Oerly then attempted to admit into evidence his Exhibit C, which contained records of his medical treatment on September 20, 21, 22, 23, and 24, and November 2, 2012. The State objected to the medical records for treatment received on dates following the incident on relevance grounds; it objected to the records from September 20 for failure to lay a proper foundation. The Court sustained the State's objections, and defense counsel attempted to make an offer of proof. Counsel argued that the records were relevant to the defense's theory as to the serious nature of Oerly's diabetic episode on the day of the offense. The court again sustained the objections.

At the close of the evidence, the court found Oerly guilty. The court sentenced him to 120 days in jail, suspended execution of the sentence, and placed Oerly on two years of unsupervised probation. This appeal followed.

## Discussion

### I.

Because Oerly's second Point raises a threshold issue concerning our authority to hear this appeal, we address it first.

In this case, the circuit court announced its finding that Oerly was guilty from the bench at the conclusion of trial. The court then asked Oerly's counsel whether he wished for additional time before sentencing. After conferring with Oerly, counsel stated that "we are prepared for the sentencing of this case." The court heard argument from counsel, and then pronounced sentence. The court entered its written judgment on the same day.

Supreme Court Rule 29.11(b) specifies that "[a] motion for new trial . . . shall be filed within fifteen days after the return of the verdict," although it allows the court to extend the time for filing a new-trial motion for ten days "for good cause shown." Rule 29.11(c) provides that "[n]o judgment shall be rendered until the time for filing a motion for new trial has expired and if such motion is filed, until it has been determined." By pronouncing sentence and entering judgment on the same day that it announced its verdict, the circuit court failed to abide by Rule 29.11(c), which required the court to wait until the expiration of the 15-day period allowed for filing a new-trial motion.

Absent a defendant's express waiver of Rule 29.11(c)'s timing requirements prior to sentencing, this Court has held that any judgment rendered before the end of the fifteen-day period is "premature and void," and that the Court is required to dismiss an appeal from such a premature judgment, even if the defendant requests that the Court decide his appeal on the merits. *See State v. Besendorfer*, 372 S.W.3d 914, 915-16 (Mo. App. W.D. 2012). *Besendorfer* did not break new ground in reaching this conclusion. To the contrary, it followed earlier decisions which had uniformly held that a judgment was "void" where it was entered in violation of Rule 29.11(c). *Id.* None of the parties in *Besendorfer* argued that the Missouri Supreme Court's decision in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009), was relevant to the issue.

4

The Southern District, sitting *en banc*, recently refused to follow *Besendorfer*, and instead held that, following *Webb*, a judgment entered in violation of Rule 29.11(c)'s timing requirements is not "void," but is merely voidable. *State v. Jacobs*, 421 S.W.3d 507, 512 (Mo. App. S.D. 2013) (en banc). *Jacobs* held that a defendant can waive the circuit court's noncompliance with Rule 29.11(c) where the defendant does not object in the trial court, or raise the issue on appeal. *Id.*

In this case, Oerly argues that we should follow *Jacobs*, and decide his appeal on the merits despite the trial court's entry of a premature judgment. We are thus required to address an issue which was not presented in *Besendorfer:* whether a judgment entered in violation of Rule 29.11(c) can be characterized as "void," consistent with *Webb*. We conclude, as did *Jacobs*, that *Webb* changes the analysis, and that *Besendorfer* should no longer be followed.

As *Jacobs* recognizes, "[t]he concept of a void judgment is inextricably intertwined with the jurisdiction of the trial court to enter the judgment." *Jacobs*, 421 S.W.3d at 511 (citing *State v. Kent*, 515 S.W.2d 457, 460 (Mo. banc 1974) ("if the court had jurisdiction of the cause and of the party, its judgment is not void, but only voidable"), and *Goins v. Goins*, 406 S.W.3d 886, 891-92 (Mo. banc 2013) (civil case; noting that "[c]ourts favor finality of judgments, so the concept of a void judgment is narrowly restricted"; "[a] judgment is void . . . only if the circuit court that rendered it (1) lacked subject matter jurisdiction; (2) lacked personal jurisdiction; or (3) entered the judgment in a manner that violated due process")).[1]

---

[1]     *See also Smith v. City of St. Louis*, 395 S.W.3d 20, 24 & n.2 (Mo. banc 2013) ("the trial court's judgment was not void as a jurisdictional matter but is instead simply voidable because the judgment was based on issues that were not properly pleaded"); *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 810-11 (Mo. banc 2011) (judgment terminating parental rights was not "void" because "jurisdiction over the child is not removed from the trial court" despite trial court's failure to order pre-termination investigation and report required by statute).

5

Therefore, the circuit court's judgment convicting and sentencing Oerly is "void" only if the court lacked jurisdiction to enter it, or if the entry of the judgment otherwise violated due process. "Missouri courts recognize two kinds of jurisdiction: subject matter jurisdiction and personal jurisdiction." *Webb*, 275 S.W.3d 249, 252 (Mo. banc 2009). In this case, the circuit court plainly had personal jurisdiction over Oerly, and no party contends that the entry of judgment – after Oerly's counsel stated that "we are prepared for the sentencing of this case" – denied Oerly due process.

We also conclude that the circuit court had subject-matter jurisdiction to enter its judgment, even though that judgment was premature under Rule 29.11(c). "Subject matter jurisdiction, . . . [concerns] the court's authority to render a judgment in a particular category of case." *Id.* at 253. As *Webb* explains, "the subject matter jurisdiction of Missouri's courts is governed directly by the state's constitution." *Id.* Specifically, Article V, § 14 of the Missouri Constitution states, "in plenary terms," that "'[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal.'" *Id.* (emphasis added in *Webb*).

This is a criminal case, and the circuit court therefore had subject-matter jurisdiction to finally resolve it. While Rule 29.11(c) provides that trial courts have no authority to enter a final judgment in a criminal case until the time for filing a new-trial motion has expired, rules which "merely set[ ] . . . limits on remedies" do <u>not</u> limit the subject-matter jurisdiction of the circuit courts granted by Article V, § 14 of the Missouri Constitution. *Webb*, 275 S.W.3d at 255. *Webb* held that a statute was not "jurisdictional" where it required a parent who was delinquent on his child-support obligations to post a bond before filing a petition to modify a child-custody decree, even though the statute might have the effect of preventing the court from proceeding in a particular case. Similarly, *Dorris v. State*, 360 S.W.3d 260 (Mo. banc 2012), held that trial

6

courts have subject-matter jurisdiction to address untimely motions for post-conviction relief, even though the post-conviction rules provide that the failure to file a timely motion "'shall constitute a complete waiver of any right to proceed'" under the rules. *Id.* at 265, 266 (quoting Rules 24.035(b), 29.15(b)).

Other post-*Webb* decisions reach the same result: statutes or rules which restrict the circuit court's power to act in particular cases, or which limit the remedies the court may award in particular cases, do not restrict the trial court's subject-matter jurisdiction, but merely the court's authority to act. *See*, *e.g.*, *In re Adoption of C.M.B.R.*, 332 S.W.3d 793, 811 & n.12 (Mo. banc 2011) (trial court did not lose jurisdiction over termination of parental rights proceeding despite its failure to order investigation and report required by statute); *State ex rel. Zinna v. Steele*, 301 S.W.3d 510, 517 (Mo. banc 2010) (trial court's "imposition of a sentence beyond that permitted by the applicable statute or rule" did not raise an issue properly characterized as "jurisdictional" post-*Webb*); *McCracken v. Wal-Mart Stores E., L.P.*, 298 S.W.3d 473, 479 (Mo. banc 2009) (statute providing that claims for certain work-related injuries could only be pursued through workers' compensation administrative process, and not through actions in circuit courts, did not divest courts of subject-matter jurisdiction).

In *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466 (Mo. banc 2011), the Missouri Supreme Court held that Supreme Court Rules which limit the time period during which a circuit court may modify a final judgment have the effect of "divest[ing] [the court] of jurisdiction," and that any untimely modified judgment entered by a circuit court "is void." *Id.* at 469; *see also Est. of Shaw*, 256 S.W.3d 72, 77 (Mo. banc 2008). The Court in *Spicer* held that *Webb* "does not affect the use of the term 'jurisdiction' in this [context]." 336 S.W.3d at 469 n.5. The rule that a trial court *loses jurisdiction* to act when a judgment becomes final and

7

unmodifiable applies equally to criminal cases. *State v. Joordens*, 347 S.W.3d 98, 100 (Mo. App. W.D. 2011) ("'once judgment and sentencing occur in a criminal proceeding, the trial court has exhausted its jurisdiction,'" and cannot thereafter modify the sentence imposed (citation omitted)). But the present case does not involve a rule which purports to divest the trial court of jurisdiction following the entry of final judgment. Instead, Rule 29.11(c) limits the trial court's ability *to enter* a final judgment, during the pendency of a criminal case in the circuit court.

Under these decisions, it is clear that Rule 29.11(c) does not – and could not – deny a circuit court subject-matter jurisdiction over a pending criminal case. The Rule merely limits the court's authority to act until the period for filing a new-trial motion has expired. Failure to follow Rule 29.11(c)'s timing requirements does not divest the circuit court of subject-matter jurisdiction, or render its judgment "void"; instead, the judgment may be voidable if and when a defendant challenges the court's premature entry of judgment.

Even if Rule 29.11(c)'s timing requirements are not deemed "jurisdictional," it could be argued that this Court has the obligation to enforce the Rule's requirements despite the lack of objection by either party. In *Dorris*, 360 S.W.3d 260, the Supreme Court held that, even if neither party raised the issue, "[i]t is the court's duty to enforce the mandatory time limits . . . in the post-conviction rules." *Id.* at 268. But the Court concluded that the filing deadlines in the post-conviction rules are non-waivable, even though they are not "jurisdictional," only because of two unique features of those rules: first, they specify that an untimely filing constitutes a "complete waiver" of the movant's right to proceed, *id.* at 267-68; and second, the post-conviction rules authorize a collateral attack on an otherwise-final criminal conviction, and must be interpreted in light of "the policy of 'bringing finality to the criminal process.'" *Id.* at 269 (citation omitted). Rule 29.11(c) shares neither of these distinguishing characteristics: it does

8

not use extraordinary language, like "complete waiver," to emphasize the necessity of adherence to its timing requirements; and the court's failure to comply with Rule 29.11(c)'s timing requirements does not *delay* the conclusion of a criminal proceeding, but instead hastens it.

Although we conclude that violations of Rule 29.11(c) do not raise a "jurisdictional" issue, we recognize that the opportunity to file a motion for new trial is an important right, and one which must generally be expressly waived prior to sentencing. The right to file a new-trial motion is particularly important in jury-tried cases, where a new-trial motion is necessary to preserve many claims of error for appellate review. The importance of the right to file a new-trial motion does not, however, mean that a judgment denying that right is "void." For example, the right to a jury trial in criminal cases is constitutionally guaranteed, and is generally only waivable by the defendant personally; in addition, by rule, the right to jury trial may only be waived in felony cases "in open court." Rule 27.01(b). Yet, despite the undeniable importance of a defendant's right to jury trial, appellate courts have analyzed the denial of that right as error (even plain error), *not* as a "jurisdictional" issue. *See*, *e.g.*, *State v. Williams*, 417 S.W.3d 360, 362-64 (Mo. App. E.D. 2013); *State v. Beam*, 334 S.W.3d 699, 703-06 (Mo. App. E.D. 2011). To our knowledge, no court has held that the denial of a criminal defendant's constitutional right to a jury trial divested the trial court of subject-matter jurisdiction, or rendered the court's judgment "void."

For all of the foregoing reasons, we conclude that *Besendorfer* should no longer be followed.[2] Instead, consistent with the Southern District's decision in *Jacobs*, we hold that a trial court's entry of a criminal judgment in violation of Rule 29.11(c)'s timing requirements does not

---

[2]     Pursuant to Western District Rule XXXI, this opinion was reviewed and approved by the Court *en banc*.

9

render the judgment "void," but merely voidable on a defendant-appellant's proper assertion of error.

Although Oerly did not affirmatively waive his right to file a motion for new trial prior to sentencing, he told the trial court he was ready to proceed to sentencing immediately after the court announced its guilty verdict. Further, Oerly expressly asks this Court to overlook the violation of Rule 29.11(c), and rule the appeal on its merits. In these circumstances, we conclude that Oerly has waived his right to challenge any error under Rule 29.11(c), and that this Court may proceed to consider the merits of his appellate arguments.

## II.

Oerly's first Point challenges the trial court's exclusion of testimony and evidence concerning Oerly's medical treatment on the day following the theft.[3]

> The trial court enjoys broad discretion in determining the relevancy of evidence. The relevancy of evidence depends upon whether the evidence tends to confirm or refute a fact in issue or to corroborate evidence that is relevant and pertains to the primary issue of the case. It is not error to refuse irrelevant or immaterial evidence. Evidence is irrelevant or immaterial if it tends to draw the jury's attention away from the issues it must decide. While we generally will not interfere with the court's ruling on the admission or exclusion of evidence, we will do so when there exists a clear showing of abuse of that discretion.

*State v. Comte*, 141 S.W.3d 89, 91 (Mo. App. S.D. 2004). In addition, "[t]his Court reviews a trial court's decision to admit or exclude evidence for prejudice, not mere error. Trial court error is prejudicial if there is a reasonable probability that the court's error affected the outcome of the trial." *State v. Clark*, 364 S.W.3d 540, 544 (Mo. banc 2012) (citation and internal quotation marks omitted).

---

[3]  Although at trial Oerly offered evidence concerning his medical treatment on multiple days prior to and following the theft as well as on the date of the theft itself, and all of that evidence was excluded, his Point Relied On and argument in Point I focus solely on the evidence concerning Oerly's medical treatment on the day following the theft, September 22, 2012.

10

The defense's theory at trial was that, at the time of the theft, Oerly had a diabetic episode in which his blood sugar dropped to such a low level that he became disoriented, and unaware of his actions or surroundings. Defense counsel stated that the medical records of Oerly's treatment the day after the incident were relevant because they supported the defense theory regarding "the serious nature of his – of his medical condition in this matter, and this all has to do with his diabetes, as well as with his state of mind."

Both in the trial court and on appeal, Oerly's counsel failed to identify any particular information contained in his medical records for September 22 which were relevant to his defense. Our independent review of those records indicates that the evidence Oerly sought to introduce concerning his medical treatment on September 22 does not support his defense theory; if anything, those records tends to *disprove* his claim that at the time of the theft he was experiencing low blood sugar and was disoriented as a result. His medical records indicate that he was admitted to the hospital on September 22 for _hyper_glycemia, and stated that his blood sugar "has been very high." Laboratory results included in the records indicate that Oerly's blood sugar readings were critically high on September 22. The records also indicate that Oerly had not been using insulin for two-to-three days prior to his admission on September 22. Contrary to his claim at trial that his diabetic condition made him disoriented, the records for September 22 describe Oerly as "[a]lert and oriented to person, place, time and situation."

Oerly's medical records for September 22 do not provide any support for his defense theory at trial: that he had _low_ blood sugar on the day of the theft, which caused him to become so disoriented that he did not know what he was doing. Oerly did not testify, and does not argue, that having _high_ blood sugar would have the same or similar effects. While the excluded records support the general proposition that Oerly had a serious diabetic condition that was not

11

adequately controlled, the trial court permitted Oerly to testify to his long history of poorly-controlled diabetes. This included testimony that he had previously experienced blackouts, and engaged in shoplifting, during low-blood-sugar episodes, and that he had been unable to acquire insulin in the days prior to the theft, but was instead attempting to control his diabetes without medication. Oerly was not prejudiced by the exclusion of cumulative evidence documenting his poorly-controlled diabetes.

In these circumstances, the trial court did not abuse its "broad discretion" in excluding the evidence of Oerly's medical treatment on September 22. We deny Oerly's first Point.

### Conclusion

The circuit court's judgment is affirmed.

_____
Alok Ahuja, Judge

All concur.

12