In the
 Missouri Court of Appeals
 Western District
 STATE OF MISSOURI, )
 )
 Respondent, ) WD83999
 )
 v. ) OPINION FILED: November 9, 2021
 )
 RANDY G. TETER, )
 )
 Appellant. )

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Patricia S. Joyce, Judge

Before Division Three: Lisa White Hardwick, Presiding Judge, Gary D. Witt, Judge and
 Edward R. Ardini, Jr., Judge

 Randy Teter ("Teter") appeals the judgment of the Circuit Court of Cole County

("trial court") convicting Teter of one count of kidnapping in the first degree, section

565.110,1 and one count of committing violence against an employee of the Department of

Corrections, section 217.385. Teter raises two points on appeal: (1) the trial court erred in

failing to conduct a Faretta2 hearing to ensure Teter's waiver of counsel was knowing,

intelligent, and voluntary; and (2) the trial court erred in ordering Teter's sentence to run

 1
 All statutory references are to R.S.Mo. 2016, as currently updated by supplement, unless otherwise noted.
 2
 Faretta v. California, 422 U.S. 806 (1975).
consecutively to Teter's prior sentence in violation of a plea agreement previously entered

into with the State. Finding no error, we affirm.

 Factual and Procedural History

 At all relevant times, Teter was an inmate at the Jefferson City Correctional Center

("JCCC"). Victim3 worked at JCCC in the Activities Coordinator's office. On July 27,

2018, several inmates at JCCC peered through Victim's office window in an intimidating

fashion. Victim was troubled by the inmates' demeanor and began to leave work early for

the day. As she was alone leaving JCCC through the interior courtyard, Teter came up

from behind her and tackled her to the ground. Although Teter was not allowed in the

interior courtyard, he had entered it by climbing up the roof of a building from an outdoor

recreational area and jumping to the ground inside the fence for the courtyard. After

tackling Victim, he wrapped his arms around her and placed a shiv4, which he made from

a piece of fencing, up to her throat. He held her body in front of him as he sat on the

ground. Several correctional officers responded to the scene immediately.

 Teter demanded to talk to the correctional officer in charge of the housing units.

Teter was apparently upset about housing conditions and used Victim as a hostage to

demand changes at the facility. After several minutes, correctional officers were able to

convince Teter to release Victim. Victim suffered injuries to her neck and face. She

resigned from JCCC six months after the incident due to the emotional trauma Teter had

inflicted upon her.

 3
 We do not identify the Victim by name to protect her privacy.
 4
 A shiv is a homemade knife or sharpened object used as a weapon.

 2
 Teter was charged with one count of kidnapping and one count of committing

violence against an employee of the Department of Corrections. Teter was initially

represented by a public defender but filed a motion to represent himself at trial, citing his

constitutional right to do so. In Teter's motion, he referenced a previous criminal trial for

prior offenses in which he represented himself, stating:

 In State v. Teter, 14AC-CR02666 Teter was charged with Murder in the first
 degree with the State seeking the death penalty. After two Feretta [sic]
 hearings, the Court granted Teter his motion to represent himself. The above
 entitled case is nowhere near as complex as the death penalty case mentioned
 . . . above. Teter has multiple in court appearances without any issues from
 him.

 At the pre-trial hearing, the trial court asked Teter if he wished to represent himself

and waive his right to counsel. Teter affirmed he wished to represent himself at trial. Teter

signed a written waiver of counsel form mandated by section 600.051. Teter, trial court,

and the State had the following dialogue:

 The Court: Mr. Teter, is that your understanding as well, that you still want
 to represent yourself?

 Teter: Yes, Your Honor.

 The Court: All right. It's my understanding that you've had several times
 where you've gotten this far with the Court in Cole County and they were
 gonna -- they had hearings on it. Do you have me having -- Do you have any
 objection to me taking notice of those other hearings where they went
 through all those rights with you?

 Teter: No, Your Honor.

 The Court: All right. I won't be having stand-by counsel for you; do you
 understand that?

 Teter: That is fine, Your Honor.

 3
 The Court: Okay. And additionally with your history and what you're in
 custody for, you will have very limited rights of moving around the
 courtroom; do you understand that?

 Teter: Yes, Your Honor, I understand that.

 The Court: All right. I'm gonna go ahead and read these rights to you, and
 then we'll fax them over there. And if that's what you want to do, you might
 have to sign it later, but -- All right.

 I request that the Court allow my waiver of attorney with full understanding
 that I'm entitled to an attorney if I so desire and with full knowledge and
 understanding of the following additional considerations. The offenses
 charged are escape from confinement --

 The State: There's two other charges.

 The Court then went through the range of punishment for each offense and then

continued by covering Teter's constitutional rights and the rights he was relinquishing.

 The Court: That you have the right to be represented by an attorney. And if
 indigent and unable to employ an attorney, I have a right to request the judge
 to appoint an attorney to assist me in defending against the charge. And the
 Court will appoint an attorney to assist me if it finds that I'm indigent and not
 able to employ one. That you have the right to a trial by jury with assistance
 of an attorney to confront and cross-examine witnesses. And a guilty plea
 waives any right to a trial. That I have the right to remain silent and not make
 any statement which may be used in the prosecution of the criminal charges
 filed against me. I am aware that any recommendation by the prosecutor is
 not binding on the judge who may accept or reject such recommendation.
 That if a guilty plea is entered, if I'm found guilty by trial of the charge, the
 judge is most likely to impose a sentence of confinement in jail or prison.
 That I've had the right to appeal the Court's decision or the jury's verdict
 should I exercise my right to trial by jury and be found guilty. The above
 rights have been read to me by the judge in open court. I understand these
 rights and request the Court to accept my waiver. Is that what you want to
 do today, sir?

 Teter: Yes, Your Honor.

 4
 The Court: All right. And, Mr. Teter, it's my understanding that you're
 familiar with the court system and that you don't have any mental
 prohibitions against you representing yourself.

 Teter: That's correct, Your Honor.

 The Court: All right. All right. I'll discharge the public defender.

 At trial, the jury found Teter guilty of both charged offenses. Teter did not file a

motion for new trial. Because he was a prior offender the trial court proceeded to

sentencing. In a previous criminal case in Cole County, Teter entered into a plea agreement

with the State in which the parties agreed that, if the State obtained probable cause of a

crime arising from the incidents in this case, "the State will agree that for any sentences

arising from that prosecution the State shall recommend: (a) a concurrent sentence with all

other terms and sentences of incarceration[.]" At the sentencing hearing in this case, Teter

stated, "Your Honor, the only thing I have to say on the record is what the plea agreement

was which is page 4, line 1 through 6. You have a copy."

 During sentencing, the prosecuting attorney stated, "Judge, we're gonna defer to the

Court as to the sentence and whether it's run consecutive or concurrent." When the trial

court asked whether the State had a sentencing recommendation, the prosecuting attorney

said, "Per agreement in his prior murder case, we are not advocating a length of time or

consecutive or concurrent. We'll defer to the Court." The trial court then sentenced Teter

to thirty years for kidnapping and ten years for committing violence against an employee

of the Department of Corrections. The sentences were ordered to run concurrent to each

other but consecutive to Teter's prior sentences. The trial court issued its judgment seven

days after the jury returned its verdict. This timely appeal follows.

 5
 Standard of Review

 As an initial matter, we must first address the trial court's error in issuing a

premature judgment. Generally, "[i]n jury-tried cases, allegations of error to be preserved

for appellate review must be included in a motion for new trial[.]" Rule 29.11(d). A motion

for a new trial shall be filed within fifteen days after the return of the verdict. Rule

29.11(b). "No judgment shall be rendered until the time for filing a motion for new trial

has expired and if such motion is filed, until it has been determined." Rule 29.11(c). "[A]

trial court's entry of a criminal judgment in violation of Rule 29.11(c)'s timing requirements

does not render the judgment 'void,' but merely voidable on a defendant-appellant's proper

assertion of error." State v. Oerly, 446 S.W.3d 304, 310 (Mo. App. W.D. 2014). Here,

the trial court entered judgment seven days after the jury returned its verdict in violation of

Rule 29.11(c). However, Teter never raised this issue in a motion for new trial, motion to

amend the judgment pursuant to Rule 78.07, or on appeal. Therefore, we consider this

issue waived by Teter and address his points on the merits. See id.

 As to point one, Teter argues our standard of review is plain error because he did

not object to the trial court's grant of his waiver of counsel. But this Court has explained

the appropriate standard of review for a self-represented defendant's failure to object to the

process by which the trial court approved a waiver of counsel:

 “Constitutional claims must be made at the first opportunity to be preserved
 for review.” State v. Davis, 507 S.W.3d 41, 44 (Mo. App. 2016). However,
 “a self-represented defendant's failure to object at trial regarding the
 knowing, voluntary, and intelligent nature of his waiver of the right to
 counsel is generally excused.” State v. Kunonga, 490 S.W.3d 746, 759 (Mo.
 App. [W.D.] 2016) (citing State v. Murray, 469 S.W.3d 921, 925 (Mo. App.
 [E.D.] 2015)). This is because a pro se defendant “cannot be expected to

 6
 object that a [waiver of counsel] was not voluntary because of alleged
 inadequacies in an on-the-record inquiry designed to determine whether [the]
 waiver is knowing, voluntary, and intelligent.” Id. (citing Murray, 469
 S.W.3d at 925). Thus, we review a claim that the [waiver-of-counsel] hearing
 was inadequate de novo. Davis, 507 S.W.3d at 44.

State v. Ndon, 583 S.W. 3d 145, 153 (Mo. App. W.D. 2019).

 As to point two, Teter argues our standard of review is abuse of discretion because

he noted the plea agreement to the trial court during sentencing and argues this constitutes

an objection to the trial court's sentencing, thereby preserving the issue for appeal. "To

preserve a claim of error, counsel must object with sufficient specificity to apprise the trial

court of the grounds for the objection." State v. Amick, 462 S.W.3d 413, 415 (Mo. banc

2015) (internal quotation omitted). Here, Teter did briefly raise the issue of the plea

agreement at the sentencing hearing. When asked if he had anything to say, Teter stated,

"Your Honor, the only thing I have to say on the record is what the plea agreement was

which is page 4, line 1 through 6. You have a copy." His explicit reference to the plea

agreement, although not in a formal objection, apprised the trial court of his grounds for

arguing for a concurrent sentence.

 The State, however, claims Teter's point two is limited to plain error review because

it was not preserved in a motion for new trial. In reply, Teter argues a motion for new trial

would not have raised issues from the sentencing hearing, only errors at trial. Teter is

correct. Because a motion for new trial is filed between the trial and sentencing following

a jury trial, it would have only raised issues that arose during trial, not sentencing.

Therefore, Teter was not required to file a motion for new trial to preserve errors at

sentencing. State v. Cowan, 247 S.W.3d 617, 619 (Mo. App. W.D. 2008) ("Errors in

 7
sentencing should be brought to the court's attention during the sentencing hearing to

preserve them for review."), abrogated on other grounds by State v. Pierce, 548 S.W.3d

900 (Mo. banc 2018). Accordingly, we review point two for abuse of discretion. See State

v. Fleming, 541 S.W.3d 560, 562 (Mo. App. W.D. 2018). "A trial court abuses its

discretion if the ruling is clearly against the logic of the circumstances and is so arbitrary

and unreasonable as to shock the sense of justice and indicate a lack of careful

consideration." Id. (internal quotation omitted).

 Analysis

 Point One

 Teter's first point argues the trial court did not conduct a thorough Faretta hearing

to ensure his waiver of counsel was knowing, voluntary, and intelligent. "The Sixth

Amendment right to counsel 'implicitly embodies a correlative right to dispense with a

lawyer's help.'" Murray, 469 S.W.3d at 926 (quoting Faretta, 422 U.S. at 814). "This right

applies to the states through the Due Process Clause of the Fourteenth Amendment." Id.

The circuit court "has no discretion to force an attorney upon a defendant who validly

waives the right to counsel." Id. "For a waiver of counsel to be effective, due process

requires that the waiver be made knowingly and intelligently." State v. Hunter, 840 S.W.2d

850, 857 (Mo. banc 1992) (citing Faretta, 422 U.S. at 835)).

 Missouri has two requirements that must be satisfied before the circuit court can

conclude that a defendant has effectively waived the right to counsel. Kunonga, 490

S.W.3d at 764. First, "[t]here must be a 'thorough [Faretta] evidentiary hearing' that

establishes that 'the defendant understands exactly what rights and privileges he is waiving,

 8
as well as the dangers associated with waiving constitutional rights.'" Id. (quoting State v.

Black, 223 S.W.3d 149, 155 (Mo. banc 2007)). Second, the defendant must be given the

opportunity to sign the written waiver of counsel form mandated by Section 600.051. Id.

 Teter does not argue he did not sign the written waiver of counsel form mandated

by section 600.051 or that the form was somehow insufficient. He only argues the trial

court failed to conduct a thorough Faretta evidentiary hearing. "There is no specific litany

required for a Faretta hearing." Id. at 763. Instead, "[w]hether a Faretta hearing establishes

that a waiver of counsel is knowingly and intelligently made depends on 'the particular

facts and circumstances surrounding the case, including the background, experience, and

conduct of the accused.'" Id. at 763-64.

 Here, Teter's waiver of counsel at the pretrial hearing was knowing and intelligent.

Teter argues the trial court did not ensure his waiver was intelligent, meaning he did not

know the potential consequences of waiving counsel. But the trial court read Teter's rights

to him in open court. The trial court informed Teter that his waiver of counsel could result

in confinement in jail or prison. Trial court also stated the potential range of punishment

for each charged offense. Further, the trial court noted on the record that Teter had

previously represented himself in criminal cases in the same county including a murder

trial in which he had been given two full Faretta hearings and in which he had been found

to have knowingly and voluntarily waived his right to counsel. Teter affirmatively

informed the trial court that it could take judicial notice of those prior Faretta hearings.

 Given Teter's background, experience, and conduct, including representing himself

in a previous murder trial and citing that experience in his motion to represent himself in

 9
this case, the trial court's Faretta hearing established that Teter reasonably understood the

consequences of waiving counsel and that his waiver was knowing and voluntary. Teter

points to nothing on appeal that would establish his circumstances had changed since the

prior Faretta hearings which would affect his understanding of his rights or his ability to

knowingly and voluntarily waive them.

 Teter also argues the trial court could not take judicial notice of prior proceedings

without first acknowledging the content of those proceedings. There is nothing in the

record to suggest that the trial court failed to properly review and consider everything that

occurred in those prior Faretta hearings. "Where a defendant affirmatively accepts and

agrees to what the trial court proposes, any claim of error related to the trial court's action

is affirmatively waived[.]" State v. Winters, 623 S.W.3d 746, 753 (Mo. App. W.D. 2021).

"Ordinarily, a party cannot complain on appeal about a procedure adopted in the trial court

at his or her own request, nor may an appellant complain of alleged error, which by such

person's conduct at trial, he or she joined in or acquiesced or invited." Id. at 753-54

(quoting State v. Pickens, 332 S.W.3d 303, 319 n.14 (Mo. App. E.D. 2011)).

 Here, Teter first invoked the prior proceedings in his motion to withdraw counsel.

He affirmatively agreed that the trial court should take judicial notice of his prior Faretta

proceedings. On appeal, Teter cannot complain of a procedure adopted by the trial court

at his own invitation. The purpose of a Faretta hearing is to ensure the waiver is knowing

and voluntary. In this case, the trial court sufficiently read Teter his rights regarding

waiving counsel, which included statements ensuring Teter knew the consequences of

waiving trial counsel. Teter's affirmation of the trial court's questions regarding his

 10
understanding that a guilty verdict would result in jail or prison confinement was

unambiguous. Teter also signed the waiver form required by section 600.051. Teter had

prior Faretta hearings and proceeded to represent himself in a prior murder case in which

he was convicted and sentenced to prison. It is hard to imagine anything that could be

presented in a current hearing that would have provided Teter any more effective

knowledge of the dangers of self-representation. Accordingly, Teter's waiver of counsel

was knowing, voluntary, and intelligent. Point one is denied.

 Point Two

 In Teter's second point, he argues the trial court erred in ordering his sentence to run

consecutively to the sentence from his prior offense. Teter bases his argument on the plea

agreement he entered into with the State in a prior criminal case, which read, "[The state]

shall recommend . . . a concurrent sentence with all other terms and sentences of

incarceration" arising from this case.

 "A prosecuting attorney has the power to enter into a plea agreement that provides

for: (1) a dismissal of other charges; (2) a recommendation for a particular sentence; (3) an

agreement that a specific sentence is the appropriate disposition of the case; or (4) a

recommendation for another appropriate disposition of the case." State v. Wright, 120

S.W.3d 792, 794 (Mo. App. W.D. 2003) (internal quotation marks omitted); Rule

24.02(d)(1).

 "In formulating a plea agreement, the prosecuting attorney and the defendant should

act fairly so that the reasonable expectations of both sides are met." Wright, 120 S.W.3d

at 794. "Where a plea [agreement] is based to a significant degree on a promise by the

 11
prosecutor, to the extent that it is part of the inducement or consideration for entering the

plea, the promise must be fulfilled." Id. (internal quotation omitted). "If the promise is not

fulfilled, the defendant must get relief." Id. "The defendant may get either specific

performance of the plea agreement or an opportunity to withdraw his guilty plea." Id.

 However, trial courts are not bound by sentencing recommendations from either

party in a nonbinding plea. See State v. Lowe, 674 S.W.2d 262, 265-66 (Mo. App. E.D.

1984). If the State agrees to make a recommendation for sentencing under Rule

24.02(d)(1)(B), the trial court neither accepts nor rejects that agreement. See Stanley v.

State, 420 S.W.3d 532, 545 (Mo. banc 2014). Rather, "[i]n the context of a nonbinding

plea agreement for a particular sentence, the prosecutor's recommendation is what the court

rejects, not the plea agreement itself, and Rule 24.02(d)(4) does not apply." Id. It is clear

from the record that the trial court had the prior plea agreement in front of it and Teter

specifically drew the court's attention to the terms of that agreement.

 Here, Teter argues the trial court erred by ordering his sentence to run consecutively,

not concurrently, to his prior sentence. However, Teter was specifically informed prior to

trial that, "I am aware that any recommendation by the prosecutor is not binding on the

judge who may accept or reject such recommendation." Trial courts may or may not follow

sentencing recommendations, so Teter cannot point to any claim of error by the trial court.

Teter correctly notes that a "plea agreement is a binding contract between the state and a

defendant[,]" not the trial court. See App. Br. at 19 (quoting Evans v. State, 28 S.W.3d

434, 439 (Mo. App. E.D. 2000)).

 12
 If the State breached its plea agreement from an earlier case by not recommending

a concurrent sentence in this case, Teter may seek relief in the proper postconviction

procedure in his previous case. See Eckhoff v. State, 201 S.W.3d 52, 55 (Mo. App. E.D.

2006) (holding the movant was entitled to relief under Rule 24.035 because the State

breached the plea agreement rendering the plea unknowing, involuntary, and unintelligent).

Teter acknowledges this Court has never addressed breaches of a plea agreement in one

criminal case in the direct appeal of a separate case, yet he asks us to remand this case for

resentencing so the State abides by the plea agreement in the prior case. However, Teter's

point on appeal is limited to allegations of error by the trial court. Therefore, this Court is

limited to addressing claims of error by the trial court, not an opposing party. See Rule

84.04(d)(1). And the trial court did not err, plainly or otherwise, nor did it abuse its

discretion by ordering consecutive sentences. Accordingly, point two is denied.

 Conclusion

 For the foregoing reasons, the judgment of the trial court is affirmed.

 __________________________________
 Gary D. Witt, Judge

All concur

 13