Carolyn Sue **COVERT, Respondent,**

**v.**

**DIRECTOR OF REVENUE, State of Missouri, Appellant.**

**No. ED 95862.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 21, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2011.

---

Chris Koster, Attorney General, Jamie P. Rasmussen, Asst. Attorney General, Jefferson City, MO, for Appellant.

Kevin A. Richardson, Washington, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

The Director of Revenue ("the Director") appeals from the judgment setting aside the suspension of the driving privileges of Carolyn Covert ("Driver"). The Director argues the trial court erred in setting aside the suspension of Driver's driving privileges because the trial court misinterpreted Sections 577.037, RSMo Cum.Supp.2008,[1] and 577.041 in that the trial court sustained the revocation and overturned the suspension of Driver' driving privileges because the trial court found the statutes required exclusion of blood alcohol evidence obtained pursuant to a court-issued warrant. We reverse and remand.

The following facts were adduced at trial. On November 2, 2009, shortly before midnight, Deputy Tyson Jones ("Deputy Jones") with the Franklin County Sheriff's Department noticed Driver passing a semi-truck. As she did so, Driver's speed reached 80 miles per hour, which was well above the posted speed limit. Deputy Jones pulled Driver over and noticed a strong odor of intoxicants emanating from her.

Driver was arrested for driving while intoxicated and was taken to the sheriff's office for field sobriety testing. After the field sobriety tests, on which Driver performed poorly, Deputy Jones read Driver the Missouri Implied Consent Warning. Driver refused to submit to a chemical test to determine her blood alcohol concentration. As a result of the refusal, Driver was issued a notice of revocation pursuant to Section 577.041.[2]

After Driver allegedly refused to submit to a chemical test, Deputy Jones requested and received a search warrant requiring Driver to submit to a blood draw. Deputy Jones transported Driver to St. John's Mercy Hospital in Washington, Missouri. Pursuant to the search warrant, Driver's blood was drawn and submitted for testing. The test results showed Driver's blood alcohol level was between 0.144 and 0.123 percent.

Driver's driving privileges were suspended for having a blood alcohol concentration above .08 percent by a notice of suspension. Driver filed a request for an administrative hearing to appeal this suspension. An administrative hearing was held, and at that hearing, the notice of suspension was sustained and the Department of Revenue was ordered to suspend or revoke Driver's license to drive in Missouri "as authorized and required by Sec-

---

1. All further statutory references are to RSMo Cum.Supp.2008, unless otherwise indicated.

2. Section 577.041 is the statute that allows a driver's driving privileges to be revoked when the driver refuses to submit to a chemical test.

tions 302.505 and 302.525." [3]

Driver filed a petition for a trial de novo, asserting the decision to suspend her license for having a blood alcohol concentration above .08 percent was erroneous because the preponderance of the evidence does not show there was probable cause to believe Driver was driving a motor vehicle with an alcohol concentration in the blood above the legal limit set forth by Section 302.505 and because the administration of the chemical test was improper. Driver also previously filed a petition for review of his revocation. This petition for trial de novo of Driver's suspension for having a blood alcohol concentration above .08% was consolidated with Driver's earlier petition for review of her license revocation for refusing to submit to a chemical test.

Driver subsequently filed a motion for summary judgment, arguing she was entitled to judgment as a matter of law because (1) a test to determine her blood alcohol content was given contrary to the dictates of Section 577.041; and (2) the warranted blood draw was inadmissible to prove Driver's blood alcohol content because it was not taken pursuant to the dictates of Section 577.037.[4]

The trial court subsequently addressed both of the actions initiated by Director against Driver: (1) the revocation for the refusal to take the chemical test; and (2) the suspension for having a blood alcohol concentration above .08 percent. The trial court found the Director had the legal right to revoke Driver's license for refusing to submit to a chemical test. However, the trial court also found Section 577.041 provides if a person under arrest refuses to provide a sample for a chemical test, none shall be given, and as a result, the test results were not admissible for the purpose of the suspension hearing. Therefore, the Director failed to establish Driver was operating a motor vehicle with a blood alcohol concentration above .08 percent. Thus, the trial court set aside the order suspending Driver's driving privileges, but sustained the Director's order revoking Driver's driving privileges for refusing to take a chemical test.

The Director filed a motion to reconsider, arguing Section 577.041 only applied to warrantless testing, but this motion was denied. This appeal, which only concerns the trial court's setting aside of the order suspending Driver's driving privileges, follows.

Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976) in driver's license suspension or revocation cases. *Connelly v. Director of Revenue*, 291 S.W.3d 318, 319 (Mo.App. E.D.2009). As a result, the judgment of the trial court will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* We defer to the trial court's determinations of credibility. *Id.*

In its sole point, the Director argues the trial court erred in setting aside the suspension of Driver's driving privileges because the trial court misinterpreted Sections 577.037 and 577.041 in that the trial court found the statutes required exclusion of blood alcohol evidence obtained pursuant to a court-issued warrant when those sections only apply to blood tests ordered on the authority of a law enforcement officer. We agree.

---

3. Section 302.505 and 302.525 provide for the suspension of a driver's driving privileges when the driver's blood alcohol concentration is eight-hundredths of one percent or more by weight.

4. Section 577.037 provides for, among other things, the admissibility of the results of the chemical test to show a driver's blood alcohol concentration.

■ Initially, we will address the question of whether Driver's license can be both revoked and suspended. Driver contends the Missouri Implied Consent Law Section 577.020–577.041 and Section 302.500 *et seq.* work together to provide punishment. Thus, if a driver submits to a chemical test, Driver maintains Section 302.500 controls and the driver will receive a suspension or revocation if his or her blood alcohol concentration is .08 percent or more. On the other hand, if a driver refuses to submit to a chemical test, Driver argues his or her license will be immediately revoked for a year pursuant to Section 577.041.1. Driver maintains these provisions are supposed to operate together so that a driver does not receive double sanctions for a single incident. Thus, the Director has to choose either revocation or suspension.

However, in *Brown v. Director of Revenue, State of Mo.,* 772 S.W.2d 398, 399 (Mo.App. W.D.1989), a driver's license was revoked under Section 577.041 when he refused to submit to a chemical test. Then the driver pleaded guilty to driving while intoxicated, which prompted the Director to assess 12 points on his license and to revoke his license again under Section 302.304. *Id.* The court found driving while intoxicated and refusing to take the chemical test were separate transgressions occurring at separate times and places, for which it could assess separate penalties. *Id.* at 400.

■ In this case, as in *Brown,* we note Driver committed two separate wrongs: (1) driving while intoxicated, and (2) refusing to submit to a chemical test. The purpose of the statutory prohibition against driving while intoxicated is to protect the public from drunk drivers. *State v. Ore,* 192 S.W.3d 723, 726 (Mo.App. S.D. 2006). Thus, Driver's license could have been both revoked and suspended if the facts supported such penalties as here and if proper procedures were followed. We now turn our attention to those procedures.

Section 577.037 provides, in pertinent part:

> Upon the trial of any person ... in any license suspension or revocation proceeding pursuant to the provisions of chapter 302, RSMo, arising out of acts alleged to have been committed by any person while driving a motor vehicle while in an intoxicated condition, the amount of alcohol in the person's blood at the time of the act alleged as shown by any chemical analysis of the person's blood, breath, saliva or urine is admissible in evidence.... If there was eight-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken.

In addition, Section 577.041 provides, in pertinent part:

> If a person under arrest ... refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, *then none shall be given* and evidence of the refusal shall be admissible in a proceeding pursuant to section 565.024, 565.060, or 565.082, RSMo, or section 577.010 or 577.012.

(Emphasis added).

In its judgment, the trial court mentions two cases, *Murphy v. Director of Revenue,* 170 S.W.3d 507, 511 (Mo.App. W.D.2005) and *State v. Smith,* 134 S.W.3d 35, 38 (Mo.App. E.D.2003), and notes neither is completely factually on point. *Murphy* involved the critical difference of a police officer ordering blood to be drawn from a driver without a warrant after a refusal to submit to a chemical test. *Murphy,* 170 S.W.3d at 509. However, the trial court relies on Murphy to determine the blood test results in this case were inadmissible.

On the other hand, *Smith* dealt with a situation almost exactly like the one in this case. *Smith* involved an officer getting a search warrant to draw blood after a driver refused to submit to a chemical test. *Smith*, 134 S.W.3d at 36–37. The court interpreted the "none shall be given" language of 577.041.1. *Smith*, 134 S.W.3d at 38. The court concluded that the provisions of Section 577.041.1 do not prohibit the admission of chemical test results obtained by warrant from a person arrested for driving while intoxicated who has refused a police officer's request to submit to a test. *Id.* The court noted the command that "none shall be given" was addressed only to the authority of law enforcement officers to proceed with a warrantless test under Chapter 577. *Id.* at 40.

Driver contends *Smith* stands for the proposition that the results of a chemical test conducted pursuant to a warrant are admissible only in a criminal proceeding, but not in an administrative proceeding like the one here. However, we find no reason to limit the holding of *Smith* in this way. *Smith* dealt with the limitations in Section 577.041 on an officer's ability to order a chemical test. *Smith*, 134 S.W.3d at 40. The court found the state's ability to apply for a search warrant to obtain evidence in criminal cases was not restricted. *Id.* We see no reason to bar the admission of evidence obtained through the use of a search warrant in compliance with Section 577.041 from an administrative proceeding.

Section 577.037 governs the admissibility of chemical tests to establish a driver's blood alcohol content in license suspension and revocation proceedings. *Reed v. Director of Revenue*, 184 S.W.3d 564, 567 (Mo. banc 2006). Section 577.037.1 provides that a chemical analysis of a person's blood alcohol content is admissible and that a blood alcohol content of .08 percent is prima facie evidence of intoxication. *Id.* at 568. Section 577.037.4 limits the admissibility test results by providing that "in order to give rise to the presumption or to have the effect provided in subsection 1," a chemical analysis "shall have been performed as provided in sections 577.020 to 577.041...." *Id.* The reference to the "effect provided in subsection 1" is to the provision in Section 577.037.1 that chemical analysis of a person's blood alcohol content is admissible. *Id.* Therefore, admissibility is conditioned upon the requirement that the tests "shall" be performed in compliance with Section 577.020 to 577.041. *Id.* A failure to comply with the provisions of Sections 577.020 to 577.041 means that the chemical analysis is not admissible in civil proceedings to suspend or revoke a driver's license. *Id.*

Thus, relying on *Smith*, we find the chemical test was properly administered after the officer obtained a search warrant in this case. Because the chemical test was properly administered under Section 577.041, its results are admissible in this civil proceeding to suspend Driver's license pursuant to Section 577.037. *Reed*, 184 S.W.3d at 568.

Therefore, we find the trial court erred in setting aside the suspension of Driver's driving privileges because the trial court misinterpreted Sections 577.037 and 577.041 in that the trial court found the statutes required exclusion of blood alcohol evidence obtained pursuant to a court-issued warrant. Point granted.

The judgment of the trial court is reversed with directions to reinstate the suspension of Driver's driving privileges.

KURT S. ODENWALD, P.J. and GARY P. KRAMER, Sp.J., concur.