

## MISSOURI COURT OF APPEALS
### WESTERN DISTRICT

| | | |
|---|---|---|
| JOSEPH EVAN DUNBAR, | ) | |
| | ) | |
| Appellant, | ) | WD85727 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | August 15, 2023 |
| DIRECTOR OF REVENUE, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
**Honorable Richard Paul Beard, II, Judge**

**Before Division Four: Gary D. Witt, Chief Judge,**
**Janet Sutton, Judge, and Matthew P. Hamner, Special Judge**

Joseph Dunbar (Dunbar) appeals the Pettis County Circuit Court's (trial court) judgment sustaining the Director of Revenue's (the Director) suspension of Dunbar's driving privileges. The Director suspended Dunbar's driving privileges upon the determination that Dunbar was arrested upon probable cause to believe that he committed an alcohol-related traffic offense and that Dunbar was driving a vehicle while his blood alcohol level was .08% or more. On appeal, Dunbar claims that the trial court erroneously declared the law, the trial court erred in admitting a toxicology report, and that there was insufficient admissible evidence establishing that Dunbar's BAC was above the legal limit. We affirm the trial court's judgment.

1

**Factual and Procedural Background**

On November 12, 2021, at approximately 11:40 p.m., a Responding Officer was dispatched to a male "passed out" in his car in a Taco Bell drive-through line. When the Responding Officer arrived, he contacted the male and identified him as Dunbar, who was asleep and slumped over the wheel of the car. The Responding Officer got Dunbar out of the car and noticed he was swaying and unsteady on his feet. Dunbar's speech was slurred, his eyes bloodshot and glassy, and he had a smell of alcoholic beverage coming from his person. The Responding Officer had Dunbar perform a series of field sobriety tests and Dunbar showed clues of intoxication during the tests. The Responding Officer asked Dunbar to blow into a portable breath test, which Dunbar did not seem to understand, saying he would give blood. Dunbar continued to seem confused about the portable breath test, eventually requesting a lawyer.

The Responding Officer arrested Dunbar for driving while intoxicated and transported him to the police department, where he gave Dunbar a phonebook and phone to contact an attorney. Before the twenty-minute period was over, the Responding Officer found Dunbar asleep at the table with his head resting on the phonebook.

The Responding Officer woke Dunbar and read him the Missouri Implied Consent Law[1] and a blood draw notification,[2] which notified Dunbar that if he refused to voluntarily provide a blood sample pursuant to Missouri's Implied Consent Law, that the Responding Officer intended to apply for a search warrant for his blood. Dunbar said he would not take any tests until he had an attorney present. The Responding Officer informed Dunbar that he had the opportunity to

---

[1] Section 577.020. Statutory references are to the Revised Statutes of Missouri (2016), unless otherwise indicated.

[2] This blood draw notification form and the information contained within the form are not required by Missouri law.

contact an attorney, and, if Dunbar would not give a yes-or-no answer, then the Responding Officer would consider Dunbar to have refused to take the test and would apply for a search warrant for Dunbar's blood. The Responding Officer marked that Dunbar refused to submit to the blood test in the alcohol influence report and then the Responding Officer submitted an affidavit with which the prosecuting attorney completed a search warrant application.[3]

A judge signed the search warrant and the Responding Officer transported Dunbar to Bothwell Regional Health Center where a phlebotomist drew Dunbar's blood at 1:35 a.m. on November 13. The blood draw occurred approximately one hour and fifty minutes after the Responding Officer contacted Dunbar at the Taco Bell drive-through. A criminalist tested Dunbar's blood sample and the toxicology report showed Dunbar's blood alcohol concentration (BAC) was 0.209%.

Dunbar received a notice from the Missouri Department of Revenue (DOR) stating that the DOR was suspending his driving privileges because Dunbar had "been stopped and/or arrested upon probable cause that [he was] driving a vehicle while [his] blood alcohol level was over the legal limit." Dunbar requested an administrative hearing at which the Director, after hearing evidence, found Dunbar was arrested upon probable cause to believe he was driving a motor vehicle while his BAC was at or above the limit required by section 302.505, and the Director's administrative suspension was sustained.

Dunbar petitioned for a trial *de novo* with the court and a trial was held at the end of August 2022. The parties stipulated that, among other things, the Responding Officer had probable cause to arrest Dunbar on suspicion for an alcohol-related traffic offense. The Director

---

[3] The record before us does not show that the Responding Officer submitted the refusal to the Director for revocation of Dunbar's license.

3

called the Responding Officer as a witness and offered into evidence, which the trial court received: the administrative hearing packet, which included the alcohol influence report; the Responding Officer's narrative; the search warrant application; the affidavit; the signed search warrant; and supporting documents.

The Director also offered the certified toxicology report establishing Dunbar's BAC into evidence. Dunbar objected to the admission of the toxicology report on the basis that the Responding Officer failed to comply with the Missouri Implied Consent Law. Specifically, Dunbar objected because the Responding Officer violated section 577.041 in that the Responding Officer did not allow Dunbar twenty minutes to contact an attorney after Dunbar was read the implied consent law.

In the trial court's findings of fact, conclusions of law, and judgment, the trial court overruled Dunbar's objection to the toxicology report and admitted the report into evidence. The trial court concluded that the Responding Officer had probable cause to arrest Dunbar for an alcohol-related traffic offense and that Dunbar was driving with a BAC of .08% or more. The trial court sustained the Director's administrative suspension of Dunbar's driving privileges.

Dunbar appeals.

**Legal Analysis**

Appellate review of a trial court's judgment in driver's license suspension and revocation cases is the same as any other court-tried civil case. *Stiers v. Dir. of Revenue*, 477 S.W.3d 611, 614 (Mo. banc 2016); *Vasquez v. Dir. of Revenue*, 658 S.W.3d 553, 556 (Mo. App. W.D. 2022). The judgment will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Stiers*, 477 S.W.3d at 614; *Vasquez*, 658 S.W.3d at 557. "When facts are not contested and the issue is one

4

of law, our review is *de novo,* and no deference is given to the trial court's determination."

*Stiers*, 477 S.W.3d at 614 (citation omitted).

*Point One*

In Dunbar's first point, he contends the trial court erred in sustaining the administrative suspension of his driving privileges because the trial court erroneously declared the law by stating in the judgment that sections 577.041 and 577.037 did not apply to Dunbar's case. We disagree and conclude that the trial court did not erroneously declare the law in its judgment.

> Missouri's Implied Consent statutes provide that all persons operating motor vehicles on Missouri's public highways, in addition to other means of transportation not at issue in this case, "shall be deemed to have given consent, subject to the provisions of sections 577.019 to 577.041, to a chemical test or tests of the person's breath, blood, saliva, or urine for the purpose of determining the alcohol or drug content of the person's blood" in certain enumerated circumstances.

*Wood v. Dir. of Revenue*, 668 S.W.3d 292, 296 (Mo. App. S.D. 2023) (citing § 577.020.1). The "refusal" provision of the Missouri Implied Consent Law is contained in section 577.041.

*Schmidt v. Dir. of Revenue*, 611 S.W.3d 542, 548 (Mo. App. E.D. 2020) (referring to section 577.041 as the "refusal" statute). Section 577.041.1 provides the following:

> If a person under arrest, or who has been detained pursuant to subdivision (2) of subsection 1 of section 577.020, or stopped pursuant to subdivision (3) or (4) of subsection 1 of section 577.020, refuses upon the request of the officer to submit to any test allowed pursuant to section 577.020, then evidence of the refusal shall be admissible in any proceeding related to the acts resulting in such detention, stop, or arrest.

§ 577.041.1. "If a driver refuses to submit to chemical analysis to determine [his or her] blood alcohol content, that driver's license will be subject to revocation pursuant to section 577.041."

*Mullin v. Dir. of Revenue*, 556 S.W.3d 626, 631 (Mo. App. W.D. 2018) (citation omitted).

Dunbar's license was not revoked for refusing to submit to a chemical test.

Dunbar's license was suspended under section 302.505.1 because the Director proved, by

5

a preponderance of the evidence, that Dunbar was arrested upon probable cause for violating an alcohol-related offense and that his BAC was .08% or more. § 302.505. The trial court did not erroneously declare the law by stating the "refusal" provision of the Missouri Implied Consent Law did not apply to Dunbar's case.

Next, we consider section 577.037 and the trial court's statement in the judgment that, because Dunbar's license was not suspended for refusing the chemical test, section 577.037 did not apply. Section 577.037 provides, in relevant part:

1. Upon the trial of any person for any criminal offense or violations of county or municipal ordinances, or in any license suspension or revocation proceeding pursuant to the provisions of chapter 302, arising out of acts alleged to have been committed by any person while operating a vehicle . . . while in an intoxicated condition or with an excessive blood alcohol content, the amount of alcohol in the person's blood at the time of the act, as shown by any chemical analysis of the person's blood, breath, saliva, or urine, is admissible in evidence and the provisions of subdivision (5) of section 491.060 shall not prevent the admissibility or introduction of such evidence if otherwise admissible.

2. If a chemical analysis of the defendant's breath, blood, saliva, or urine demonstrates there was eight-hundredths of one percent or more by weight of alcohol in the person's blood, this shall be prima facie evidence that the person was intoxicated at the time the specimen was taken.

§ 577.037.1-.2.

Dunbar contends that section 577.037.1's language, "Upon the trial of any person for any criminal offense or violations of county or municipal ordinances, *or in any license suspension or revocation proceeding pursuant to the provisions of chapter 302*" establishes that the trial court erroneously declared the law in the judgment by stating that it did not apply in Dunbar's case. § 577.037.1 (emphasis added). Dunbar, however, fails to consider section 577.037's purpose in the context of his case and the Director's burden of proof in license suspension cases where the Director must prove that a driver's BAC is .08% or more.

6

Section 577.037 "provides that a chemical analysis of a person's blood alcohol content is admissible and that a blood alcohol content of .08 percent is prima facie evidence of intoxication." *Covert v. Dir. of Revenue*, 344 S.W.3d 272, 276 (Mo. App. E.D. 2011); § 577.037.1-.2. As to whether the trial court erroneously declared the law in its judgment by stating that section 577.037 was "inapplicable" to Dunbar's case, we find *Collins v. Dir. of Revenue*, 399 S.W.3d 95 (Mo. App. W.D. 2013) instructive. In *Collins*, we discussed, *inter alia*, the purpose of section 577.037. We said:

> [T]he purpose of the presumption in section 577.037.1[4] is to provide an alternate means for proving the "intoxicated condition" element of driving while intoxicated. This presumption simply serves no purpose for [the] Director in license revocation and suspension cases. In such cases, [the] Director must prove "that the person was arrested upon probable cause to believe such person was driving a motor vehicle *while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight . . . .*"

*Collins*, 399 S.W.3d at 101-02 (quoting § 302.505.1). "As demonstrating BAC is a necessary element of [the] Director's case, [the] Director has no use for the presumption" in section 577.037.2. *Id*. at 102.[5] *See also O'Rourke v. Dir. of Revenue*, 409 S.W.3d 443, 450 (Mo. App. E.D. 2013) (concluding that "[t]he Director is not required to prove the driver was intoxicated, only that his BAC was over the legal limit, so the presumption of intoxication in [s]ection

---

[4] *Collins v. Dir. of Revenue*, 399 S.W.3d 95 (Mo. App. W.D. 2013) referred to an earlier version of section 577.037 that included the presumption in section 1 of 577.037. *See Collins*, 399 S.W.3d at 100 n.6. The presumption is now in section 577.037.2.

[5] This differs from the State's burden when the State prosecutes an individual for driving while intoxicated under section 577.010.1. When prosecuting under section 577.010.1, "the State need not establish and prove that the individual had a BAC of .08 or higher; the State need only demonstrate that the person 'operate[d] a motor vehicle while in an intoxicated condition.'" *Collins*, 399 S.W.3d at 102 (quoting § 577.010.1). Meanwhile, "[t]he presumption in section 577.037.[2] is available as a tool for the State to use to prove the element of 'intoxicated condition' if the State has credible evidence of excessive BAC." *Id.* at 102.

577.037 does not aid the Director in establishing a case for revocation or suspension under [s]ection 302.505.1.").

In this case, the Director had no use for the presumption in section 577.037.2 since the Director did not have to prove that Dunbar was intoxicated, but instead had to prove that his BAC was over the legal limit. *See Collins*, 399 S.W.3d at 101-02; *O'Rourke*, 409 S.W.3d at 450. Therefore, "because the presumption of intoxication in section 577.037.[2] does not alter [the] Director's burdens of production and persuasion . . ." *Collins*, 399 S.W.3d at 102, we conclude that the trial court's judgment did not erroneously declare the law.

Point one is denied.

*Points Two and Three*

We now turn to Dunbar's second and third points and address them together. In his second point, Dunbar argues the trial court erred in sustaining the administrative suspension of his driving privileges and in admitting the toxicology report because the Responding Officer violated Missouri's Implied Consent Law when he failed to allow Dunbar twenty-minutes to contact an attorney after reading Dunbar the implied consent law. In his third point, Dunbar argues the trial court erred in sustaining the administrative suspension of his driving privileges because "without an admissible breath or blood test," the Director did not meet its burden of establishing that Dunbar's BAC was .08% or more, and, thus, the judgment was based on insufficient evidence.

To support a revocation or suspension of a driver's license under section 302.505.1, the Director must establish that, at the time of the arrest: (1) the driver was arrested upon probable cause for violating an alcohol-related offense, and (2) the driver's BAC was .08% or more. *See Grafeman v. Dir. of Revenue*, 344 S.W.3d 861, 863 (Mo. App. W.D. 2011) (citing § 302.505).

8

At trial, the parties stipulated, among other things, that probable cause existed for the Responding Officer to arrest Dunbar on suspicion that Dunbar committed an alcohol-related traffic offense. Therefore, the issue at the trial *de novo* was whether the Director established by a preponderance of the evidence that Dunbar's BAC was .08% or more.

Dunbar argues that the toxicology results establishing his BAC, obtained after a court-ordered search warrant, were inadmissible because the Responding Officer violated Missouri's Implied Consent Law, section 577.041.3, by failing to allow Dunbar twenty minutes to contact an attorney after reading him the implied consent law.[6] Dunbar argues that because the Responding Officer violated the Missouri Implied Consent Law, then the toxicology report containing the chemical analysis of his blood was inadmissible in the civil proceeding to suspend his license, despite the Responding Officer obtaining a search warrant to draw Dunbar's blood.

---

[6] 577.041.3 provides:

> If a person when requested to submit to any test allowed pursuant to section 577.020 requests to speak to an attorney, the person shall be granted twenty minutes in which to attempt to contact an attorney. If, upon the completion of the twenty-minute period the person continues to refuse to submit to any test, it shall be deemed a refusal.

When a driver requests an attorney, the twenty-minute time period in section 577.041.3 "begins immediately after the officer has informed the driver of the implied consent law, irrespective of whether the driver requested an attorney before or after an officer informs the person of the implied consent law." *Norris v. Dir. of Revenue*, 304 S.W.3d 724, 727 (Mo. banc 2010). When a driver's section 577.041's right to counsel is violated, his or her refusal of the chemical test is not "voluntary and unequivocal" and if the driver was prejudiced as a result of the officer's failure to comply with section 577.041, then relief is warranted. *Roesing v. Dir. of Revenue*, 573 S.W.3d 634, 640 (Mo. banc 2019) (citing *Norris*, 304 S.W.3d at 726).

The limited right recognized by section 577.041 to attempt to contact an attorney "is purely of statutory origin; a driver has no constitutional right to consult with an attorney before deciding whether to submit to a blood-alcohol test." *Green v. Dir. of Revenue*, 386 S.W.3d 858, 861 (Mo. App. W.D. 2012). *See also Roesing*, 573 S.W.3d at 637 n.5 (recognizing that "[a] driver does not have a constitutional right to consult with an attorney prior to deciding whether to submit to a chemical test.").

9

The Director agrees that if Dunbar's license was revoked for *refusing* a chemical test, then the revocation would be improper because the Responding Officer did not comply with section 577.041.3 since the Responding Officer did not allow Dunbar twenty minutes to contact an attorney. As the Director correctly points out, however, Dunbar's license was not revoked for refusing a chemical test, but rather, his license was suspended under section 302.505.1 because the Director proved, by a preponderance of the evidence, that Dunbar was arrested upon probable cause for violating an alcohol-related offense and Dunbar's BAC exceeded the legal limit. The Director argues that the toxicology report was admissible because Dunbar's blood sample was obtained pursuant to a valid search warrant under sections 542.266 and 541.271[7] and not under the Missouri Implied Consent Law.

> Missouri's Implied Consent Law, [was] adopted to establish a fixed standard for procuring admissible evidence of blood alcohol for use against persons operating automobiles while intoxicated, [and it] provides that any person who drives on the public highways is deemed to have consented to a chemical test in order to determine the alcohol or drug content of the person's blood. § 577.020. However, in tandem with section 577.020, the Missouri legislature also enacted section 577.041, the "refusal" statute, which provides that any person under arrest may expressly refuse to take the test.

*Schmidt*, 611 S.W.3d at 548 (citations omitted).

As discussed *infra*, implied consent testing is not the only way for a law enforcement officer to gather chemical evidence of a driver's impairment. A law enforcement officer may forego implied consent altogether and apply for a search warrant that authorizes a blood draw.

---

[7] Section 542.266.2 provides, "A search warrant may be issued by an appellate judge or by any judge of a court having original jurisdiction of criminal offenses within the territorial jurisdiction where the person, place, or thing to be searched is located . . . ."

Section 542.271 provides, in relevant part, that a search warrant may be issued for any "[p]roperty, article, material, or substance that constitutes evidence of the commission of a criminal offense" or "[p]roperty for which possession is an offense under the law of this state."

"In Missouri, it is generally recognized that a court may issue a search warrant pursuant to section 542.271 authorizing a blood draw to determine the subject's blood alcohol content and the results are admissible." *Id*. (citing *State v. Smith*, 134 S.W.3d 35, 37 (Mo. App. E.D. 2003)).

In *Smith*, an officer obtained a search warrant to draw a driver's blood after the driver refused to submit to a chemical test. *Smith*, 134 S.W.3d at 40. The Eastern District held that the clause "none shall be given" in a prior version of the refusal provision of the Missouri Implied Consent Law, section 577.041, prohibited warrantless tests authorized by law enforcement officers pursuant to chapter 577, but did not prohibit a court from issuing a search warrant to obtain samples of a defendant's blood for chemical testing. *Id.* The Eastern District concluded:

> The Missouri Implied Consent Law . . . provides administrative and procedural remedies for refusal to comply. Because it is directed only to warrantless tests authorized by law enforcement officers, it does not restrict the state's ability to apply for a search warrant to obtain evidence in criminal cases pursuant to section 542.276 RSMo (2000) *or a court's power to issue a search warrant* under section 542.266 RSMo (2000).

*Id*. (emphasis added).

Similarly, in *Bender v. Director of Revenue*, a driver was arrested for driving while intoxicated and he refused to submit to a chemical blood test, so a police officer obtained a search warrant to draw his blood. 320 S.W.3d 167, 168-69 (Mo. App. E.D. 2010). The driver's blood was drawn pursuant to the search warrant, without the driver's consent, and his license was revoked for his test refusal. *Id.* at 169. The driver petitioned for review in the trial court, the trial court denied the petition, and found that the driver refused to submit to the chemical test. *Id.* On appeal, the driver argued that because the samples of his blood were obtained and a chemical test performed pursuant to a search warrant obtained after he refused to submit to a chemical test of his blood, it was not a "refusal" under section 577.041. *Id.* at 170.

The Eastern District disagreed and concluded: "Obtaining evidence of a driver's blood alcohol content under the Missouri Implied Consent Law is distinct from obtaining evidence by a search warrant." *Id*. (citing *Smith*, 134 S.W.3d at 40). "The Missouri Implied Consent Law is directed to warrantless testing by consent by law enforcement officers, providing administrative and procedural remedies for refusal to comply." *Id.* (citing *Smith*, 134 S.W.3d at 40).

The evidence of Dunbar's BAC came from a blood sample drawn pursuant to a valid search warrant and the Director did not rely on the test results of a blood sample taken pursuant to Missouri's Implied Consent Law. The Responding Officer's failure to comply with the twenty-minute rule in section 577.041.3 does not render the toxicology results inadmissible in Dunbar's administrative suspension hearing. Nor does the Responding Officer's failure to comply with the twenty-minute rule negate that the search warrant was validly issued and served, and that Dunbar's blood sample was properly drawn and tested. Dunbar has not challenged or alleged that his blood was improperly drawn or tested or the validity of the search warrant.

Dunbar argues that the "gravamen of section 577.041—voluntary, intentional, and informed decisions—cannot be satisfied" when a driver is not given the twenty minutes to contact his attorney to have an "exchange of information" about whether to take the chemical test. Dunbar contends that there must be a "remedy" for the Responding Officer's violation of the Missouri Implied Consent Law in this case even though the Responding Officer obtained Dunbar's blood by a search warrant.

That Dunbar did not receive the statutorily required twenty-minutes to contact an attorney after he was read the implied consent law is immaterial and does not render the toxicology report inadmissible in the trial *de novo* because his consent was unnecessary under the facts in this case. The Responding Officer submitted an affidavit and a prosecutor applied for and obtained a court-

12

ordered search warrant for a sample of Dunbar's blood. Once this search warrant was obtained, Dunbar no longer had a choice to consent to chemical testing. Dunbar's BAC results were not obtained by the implied consent law, and thus, Dunbar was not entitled to any remedy in those statutes at the trial *de novo*.

Dunbar argues that even if his blood was drawn pursuant to a warrant, for his BAC to be admissible in the administrative proceeding to suspend his license, the Responding Officer must still have complied with the Missouri Implied Consent Law. Dunbar cites *Covert v. Director of Revenue*, 344 S.W.3d 272 (Mo. App. E.D. 2011) in support. The Director also cites *Covert* in support, but instead for the proposition that toxicology results from a blood sample taken after a search warrant are admissible in administrative proceedings and that the Missouri Implied Consent Law does not prohibit law enforcement from obtaining a sample of the arrestee's blood by authority of a search warrant.

In *Covert*, a driver was arrested for driving while intoxicated and refused to submit to a chemical test, prompting the officer to request and receive a search warrant to draw the driver's blood. 344 S.W.3d at 273. Pursuant to the search warrant, the driver's blood was drawn and the test results showed the driver's BAC exceeded the legal limit. *Id.* The Director issued a notice of revocation based on the driver's refusal and also a suspension based on the driver's excessive BAC. *Id.* The driver argued the warranted blood draw was inadmissible to prove the driver's BAC because the blood draw was not taken pursuant to section 577.037 and that *State v. Smith*, 134 S.W.3d 35 (Mo. App. E.D. 2003) did not extend the admission of the warranted blood draw to administrative proceedings. *Id.* at 276. After consolidating the petitions for review, the trial court found that the Director could revoke the driver's license for refusing the test, but it set aside the order of suspension on the grounds that the test results from the search warrant were

13

inadmissible. The trial court reasoned that those test results were inadmissible because, at the time, section 577.041 provided that if a person under arrest refused to provide a sample for a chemical test, then none shall be given. *Id.* at 274. As a result, sections 577.037 and 577.041 required exclusion of blood alcohol evidence obtained pursuant to a court-issued warrant. *Id.*

On appeal, the Director contended that the trial court erred in setting aside the driver's suspension because "the trial court misinterpreted [s]ections 577.037 and 577.041 in that the trial court found the statutes required exclusion of blood alcohol evidence obtained pursuant to a court-issued warrant when those sections only apply to blood tests ordered on the authority of a law enforcement officer." *Id*. The Eastern District agreed and held the results of the driver's blood test, taken after the court-ordered search warrant, were admissible and the trial court erred in excluding them. *Id*. at 276.

Dunbar misconstrues *Covert* to support his position. Dunbar argues that in *Covert*, the Court analyzed the admissibility of the driver's blood sample through the Missouri Implied Consent Law. Dunbar contends that the following sentence in *Covert* supports his argument that a blood result stemming from a search warrant is inadmissible in an administrative proceeding if the officer fails to comply with Missouri's Implied Consent Law: "Because the chemical test was properly administered under [s]ection 577.041, its results are admissible in this civil proceeding to suspend [d]river's license pursuant to [s]ection 577.037." *Id*.

*Covert* did not involve an argument that an officer violated the implied consent law and did not examine whether a violation of Missouri's Implied Consent Law could act as another sort of exclusionary rule prohibiting the admission of evidence from a validly obtained and executed search warrant. In *Covert*, the trial court wrongly excluded the driver's blood draw test results by erroneously interpreting sections 577.037 and 577.041 to require the exclusion of BAC

14

evidence obtained pursuant to a court-ordered search warrant. *Id*. *Covert* extended the holding

of *Smith*, allowing the BAC from a warranted blood draw to be admitted in administrative and

criminal proceedings. *Id.* Thus, *Covert* did not create a new judicial remedy for a violation of

Missouri's Implied Consent Law to exclude blood draws and resulting toxicology results

completed pursuant to court-ordered search warrants.

As *Smith* and *Bender* recognized, however, the Missouri Implied Consent Law provides

administrative and procedural remedies for refusal to comply but the law is directed to

*warrantless testing* authorized by law enforcement officers. *Bender*, 320 S.W.3d at 170; *Smith*,

134 S.W.3d at 40. No authority supports Dunbar's argument that the Missouri's Implied

Consent Law's procedural remedies apply when a search warrant is validly obtained and

executed.

Dunbar does not challenge the validity of the search warrant under section 542.271 and

Dunbar stipulated at trial that his blood was drawn in accordance with the methods and standards

approved by the Department of Health and Senior Services. Thus, we conclude the toxicology

results establishing Dunbar's BAC were properly admitted at his trial.

Based on the parties' stipulation that the Responding Officer had probable cause to arrest

Dunbar on suspicion for an alcohol-related traffic offense, and the properly admitted toxicology

results showed Dunbar's BAC was 0.209%, which exceeded the legal limit, the trial court

properly sustained the suspension of Dunbar's driving privileges. Additionally, as the BAC

result was properly admitted, there was more than sufficient evidence to support the trial court's

judgment.[8]

---

[8] We note that the trial court's judgment, under a section titled "BAC," states that, even if the
toxicology report was not admitted:

Points two and three are denied.

**Conclusion**

The trial court's judgment sustaining the Director's administrative suspension of

Dunbar's driving privileges is affirmed.

_(signature)_
Janet Sutton, Judge

Gary D. Witt, Chief Judge, and Matthew P. Hamner, Special Judge, concur.

---

[T]he arresting officer had probable cause to believe [Dunbar's] BAC exceeded .08% in that [Dunbar] was passed out in his car in the driving lane of a fast food restaurant, had distinct nystagmus, slurred speech, loss of balance, passed out again in the booking room, [and] admitted to alcohol consumption.

Section 302.505.1 authorizes the Director of Revenue to suspend or revoke an operator's license if the person is "arrested upon probable cause to believe such person was driving a motor vehicle while the alcohol concentration in the person's blood, breath, or urine was eight-hundredths of one percent or more by weight, based on the definition of alcohol concentration in section 302.500 . . . ." Alcohol concentration is defined in section 302.500 as "the amount of alcohol in a person's blood at the time of the act alleged as _shown by chemical analysis_ of the person's blood, breath, saliva or urine." (Emphasis added). _See also Grafeman v. Dir. of Revenue_, 344 S.W.3d 861, 863 (Mo. App. W.D. 2011) ("To prevail on a challenge to the suspension of a driver's license pursuant to section 302.505.1, the Director had the burden to show by preponderance of the evidence: (1) that probable cause existed for the arrest and (2) that [the driver's] blood alcohol level was eight-hundredths of one percent or more by weight.").

The Responding Officer's observations of Dunbar as noted by the trial court did not establish the amount of alcohol in Dunbar's blood as defined by section 302.500, but the observations are immaterial to our resolution of the issues in this appeal. The toxicology report was properly admitted and established that Dunbar's BAC was 0.209%, which was over the legal limit.